IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TRISURA SPECIALTY INSURANCE COMPANY,

Plaintiff,

CASE NO.

vs.

ANTONIO'S CIGAR, CO. d/b/a LIT CIGAR AND MARTINEE LOUNGE, 912 FRANKLIN STREET, LLC and AARON WILLIAMS

Defendants
_______________________________________/

**COMPLAINT FOR DECLARATORY RELIEF AND DEMAND FOR JURY TRIAL**

Plaintiff, TRISURA SPECIALTY INSURANCE COMPANY ("TRISURA"), hereby files its Complaint for Declaratory Relief against Defendant, ANTONIO'S CIGAR, CO. d/b/a LIT CIGAR AND MARTINEE LOUNGE ("ANTONIO'S"), Defendant, 912 FRANKLIN STREET, LLC ("912"), and Defendant, AARON WILLIAMS ("WILLIAMS"), and alleges as follows:

## NATURE OF ACTION

1. This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 – 2202, and the underlying amount in controversy is more than $75,000, exclusive of interest, costs, and attorneys' fees. This action has been filed for the purpose of resolving an actual and present *bona fide* controversy between the parties as to the scope of

TRISURA's obligation, if any, to defend and in turn, indemnify ANTONIO'S, against an underlying action filed by WILLIAMS, which is styled *Aaron Williams v. Antonio's Cigar, Co. d/b/a Lit Cigar and Martinee Lounge and 912 Franklin Street, LLC* and is currently pending in the Circuit Court for Hillsborough County, Florida under case number 26-CA-002416 ("Underlying Action"). A copy of the Complaint in the Underlying Action is attached hereto as Exhibit "A."

2. ANTONIO'S operates a bar/lounge located at 908 N. Franklin Street, Tampa, FL ("Premises").

3. WILLIAMS seeks damages related to a "bodily injury" he suffered on or about August 18, 2025, when "[u]pon walking into the doorway to exit [the Premises he] was shot multiple times[.]" See Exhibit A, ¶ 11.

**JURISDICTION, PARTIES, AND VENUE**

4. TRISURA an insurance company, is an Oklahoma corporation with its principal place of business in Oklahoma City, Oklahoma. TRISURA is authorized to conduct business throughout the State of Florida. TRISURA is not a citizen of Florida.

5. ANTONIO'S is a Florida Profit Corporation, doing business and licensed to do business in the State of Florida and having its principal place of business in Tampa, Florida. The one identified corporate officer of ANTONIO'S is President Antonio Prieto, whom, based upon ANTONIO'S corporate filings, is a resident of Tampa, Florida.

6. 912 is a Florida Limited Liability Company, doing business and licensed to do business in the State of Florida and having its principal place of business in Tampa, Florida. The citizenship of 912 is determined by the citizenship of each of its members.

912's members are: (1) Jason Accardi, a natural person domiciled in and a citizen of Florida, residing at 5112 W. Poe Ave., Tampa, FL 33629-7527; (2) John Accardi, a natural person domiciled in and a citizen of Florida, residing at 4935 New Providence Ave., Tampa, FL 33629; and (3) Joseph Kokolakis, a natural person domiciled in and a citizen of Florida, residing at 134 Buena Vista Dr. N, Dunedin, FL. Accordingly, 912 is a citizen of Florida. 912 is an interested party in this matter as an entity whose interests may be affected by the declarations being sought by TRISURA.

7. WILLIAMS is a Florida resident residing in Hillsborough County, Florida, and is otherwise *sui juris*. WILLIAMS is an interested party in this matter as an individual whose interests may be affected by the declarations being sought by TRISURA.

8. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 and Federal Rules of Civil Procedure, Rule 57 to resolve an actual controversy between the parties as set forth herein. This Court has jurisdiction over this action pursuant to 28 U.S.C § 1332, because there is complete diversity of citizenship between TRISURA and Defendants and there is more than $75,000 in controversy.

9. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391 because the events giving rise to this litigation allegedly occurred in Pinellas County, Florida.

## UNDERLYING COMPLAINT

10. WILLIAMS' complaint in the Underlying Action explains that on August 18, 2025, he was a patron at the Premises when "an argument occurred inside [the

Premises] between . . . WILLIAMS, his friends and another group of individuals." See Exhibit "A," ¶ 9.

11. According to WILLIAMS, he and "his friends were allowed to leave the premises through the front door. Upon walking into the doorway to exit . . . WILLIAMS was shot multiple times by one of the individuals that had previously been arguing with [WILLIAMS]." See Exhibit "A," ¶ 11.

12. WILLIAMS seeks damages for the injuries and asserts that as a result of the shooting he has "suffered serious bodily injury and/or aggravation of pre-existing condition and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and/or aggravation of a previously existing condition. The losses are either permanent or continuing and [WILLIAMS], will suffer the losses in the future." See Exhibit "A," ¶ 17.

**<u>TRISURA'S POLICY</u>**

13. TRISURA issued to ANTONIO'S policy number OSU1006276-02, which was effective from February 4, 2025 through February 4, 2026 ("Policy"). The Policy provides commercial general liability coverage and liquor liability coverage. A true and correct copy of the Policy is attached hereto and referenced herein as Exhibit "B."

14. Section I - Coverage A of the Policy's Commercial General Liability Coverage Form, as provided by a "Limitation Of Coverage To Designated Premise, Project Or Operation" endorsement (form CG 21 44 04 17), provides that TRISURA "will pay those sums that the insured become legally obligated to pay because of 'bodily injury' . . .

occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises" . . . "during the policy period" and is caused by an "occurrence." See Exhibit "B," pages 9 and 81. The Scheduled premises is 908 N. Franklin Street, Tampa, FL ("Premises"). See Exhibit "B," page 3.

15. Section I - Coverage A of the Policy's Commercial General Liability Coverage Form further states that TRISURA "will have the right and duty to defend insured against any 'suit' seeking those damages" covered by the Policy. See Exhibit "B," page 9.

16. Section I – Liquor Liability Coverage of the Policy's Liquor Liability Coverage Form provides coverage for TRISURA "will pay those sums that the insured become legally obligated to pay because of 'injury' to which this insurance applies if liability for such 'injury' is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage." See Exhibit "B," page 25.

17. Section I – Liquor Liability Coverage of the Policy's Liquor Liability Coverage Form further states that TRISURA, "will have the right and duty to defend insured against any 'suit' seeking those damages" covered by the Policy. See Exhibit "B," page 25.

18. Pursuant to an "Expanded Definition of Bodily Injury" endorsement (form OSU-TSI 1007 (12/18)), the Policy defines "bodily injury" as follows:

**EXPANDED DEFINITION OF BODILY INJURY**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**LIQUOR LIABILITY COVERAGE FORM**

The Definition of "bodily injury" is removed in its entirety and replaced with the following:

1. "Bodily injury" means

   a. bodily injury,
   b. sickness,
   c. disease; or

2. mental anguish or emotional distress arising out of a., b., or c.,

   above, sustained by a person, including death resulting from any of these anytime.

See Exhibit "B," page 42.

19. The Policy's Liquor Liability Coverage Form defines "injury" as "damages because of 'bodily injury' or 'property damage', including damages for care, loss of services or loss of support." See Exhibit "B," page 29.

20. The Policy contains an "Exclusion – Firearms or Weapons" endorsement (form OSU-TSI 1456 (06/21)), which provides, in relevant part, as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION – FIREARMS OR WEAPONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM

The following exclusion is added to the COMMERCIAL GENERAL LIABILITY COVERAGE FORM and the LIQUOR LIABILITY COVERAGE FORM:

A. This insurance does not apply to "bodily injury" . . . or "injury" arising out of, caused by, or resulting from, in whole or in part:

1. The ownership, maintenance, use or misuse by any insured or any other person of any "firearm";

2. The ownership, maintenance, use or misuse by any insured or any other person of any object or instrument used as a "weapon", whether or not it was originally intended, created or designed to be used as a "weapon";

3. Any act, error or omission committed by you or on your behalf in connection with the prevention or suppression of the use of[:]

a. Any "firearm";

b. Any object or instrument used as a "weapon", whether or not it was originally intended, created or designed to be used as a "weapon";

4. The failure of any insured, or any person or legal entity to provide an environment safe from the use of "firearms" or "weapons" whether or not such instrument, object or projectile was originally intended, created or designed to be used as a "weapon" or "firearm", including but not limited to the failure to provide adequate security, or the failure to warn of the dangers of the environment which could contribute in whole or in part to the "bodily injury," . . . or "injury," or the failure to maintain the premises by you, any insured, or any person or legal entity;

* * *

B. This exclusion applies to the foregoing and to any claim or "suit" alleging in whole or in part the foregoing:

1. Whether an act or omission is by, for, or on behalf of an insured, or at the direction of an insured, or by or at the direction of any other person or entity.

2. Whether an act or omission is on premises owned or occupied by an insured, or owned or occupied by any other person or entity;

3. Regardless of the intent or degree of culpability of any insured, or of any other person or entity;

4. Regardless of whether the use or misuse of a "firearm" or "weapon" is a direct cause, and/or a contributory cause of such "bodily injury", . . . or "injury";

5. Regardless of the presence of other allegations in the claim or "Suit" which are not excluded by the terms of this endorsement; and

6. Regardless of the legal theory of liability or damages, including but not limited to vicarious liability, violation of any law or statute, criminal act, intentional act or negligence, and including but not limited t causes of action based on hiring, supervision, retention, training, instructing, advising, monitoring, providing security, or implementing procedures and protocols.

C. The following added to SECTION V – DEFINITIONS

1. "Firearm" means any pistol, rifle, gun or other device capable of expelling or propelling one or more projectiles by the action of an explosive, combustible propellant, or compressed air.

2. "Weapons" means instruments that can be or are utilized in an offensive or defensive nature and include but are not limited to batons, bow or crossbow, arrows, knives, mace, stun guns or swords.

See Exhibit "B," pages 62-64.

**COUNT I**
**DECLARATORY RELIEF REGARDING THE LACK OF COVERAGE FOR THE CLAIM IN THE UNDERLYING ACTION**

21. TRISURA re-alleges and incorporates the allegations contained in paragraphs 1-20 above, as if fully set forth herein.

22. Coverage A in the Commercial General Liability Coverage Form provides coverage to ANTONIO'S for damages because of "bodily injury," subject to the Policy's exclusions and endorsements.

23. Section I - Liquor Liability Coverage in the Liquor Liability Coverage Form provides coverage to ANTONIO'S for damages because of "injury," which includes "bodily injury," subject to the Policy's exclusions and endorsements.

24. Pursuant to the "Exclusion – Firearms or Weapons" endorsement, neither Coverage A in the Commercial General Liability Coverage Form nor Section I - Liquor Liability Coverage in the Liquor Liability Coverage Form provide coverage for "'bodily injury' . . . or 'injury' . . . arising out of, caused by, or resulting from, in whole or in part, . . . [t]he . . . use or misuse by any . . . other person of any 'firearm' [nor for] [t]he failure of any insured . . . to provide an environment safe from the use of 'firearms' . . . including but not limited to the failure to provide adequate security.

25. In the Underlying Action, WILLIAMS seeks damages against ANTONIO'S because of "bodily injury" caused by a "shooting." Thus, any claims related to the shooting fall squarely within the Policy's "Exclusion – Firearms or Weapons" endorsement such that TRISURA has no obligation to defend or indemnify ANTONIO'S against WILLIAMS' claims in the Underlying action.

WHEREFORE, TRISURA respectfully requests that this Court enter an order of declaratory judgment finding that:

1. Pursuant to the Policy's "Exclusion – Firearms or Weapons" endorsement, the Policy provides no coverage for any claims made related to the shooting of WILLIAMS that took place at the Premises on August 18, 2025, including those claims in WILLIAMS' Complaint in the Underlying Action against ANTONIO'S;

2. TRISURA has no duty to defend or indemnify ANTONIO'S, under Coverage A contained in the Policy's Commercial General Liability Coverage Form with respect to the shooting of WILLIAMS that took place on August 18, 2025 at the Premises;

3. TRISURA has no duty to defend or indemnify ANTONIO'S under Section I - Liquor Liability Coverage contained in the Policy's Liquor Liability Coverage Form;

4. TRISURA, is entitled to any other such relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

TRISURA hereby demands a jury trial on all issues so triable.

Dated: August 24, 2026.

Respectfully submitted,

*/s/ Jessica S. Forbes*

**NICHOLAS D. FREEMAN**
Florida Bar No. 118620
nicholas.freeman@wilsonelser.com
**JESSICA S. FORBES**
Florida Bar No. 007869
jessica.forbes@wilsonelser.com
Wilson Elser Moskowitz Edelman & Dicker, LLP

111 North Orange Avenue, Suite 1200
Orlando, FL 32801
(407) 203-7599 - Phone
(407) 648-1376 – Facsimile
*Counsel for Plaintiff,* TRISURA SPECIALTY INSURANCE COMPANY

# EXHIBIT “A”

Filing # 242909980 E-Filed 03/03/2026 09:34:47 AM

Date: 3/13/26
Time: 3pm 2001
Process Server: BLJ
CPS# 07-787484

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**

AARON WILLIAMS,

Plaintiff,

v.

Case No.: 26-CA-002416
Division: J

ANTONIO'S CIGAR, CO. d/b/a
LIT CIGAR AND MARTINEE LOUNGE, and
912 FRANKLIN STREET, LLC,

Defendants.
______________________________/

**SUMMONS**

THE STATE OF FLORIDA:
To Each Sheriff of the State:

YOU ARE COMMANDED to serve this Summons, a copy of the Complaint, First Set of Interrogatories, First Request to Produce, Initial Disclosures, and Designation of E-Mail in this action on Defendant:

**912 FRANKLIN STREET, LLC**
**c/o JASON ACCARDI, Registered Agent**
**1523 NORTH FRANKLIN STREET**
**TAMPA, FL 33602**

Each Defendant is required to serve written defenses to the Complaint on Plaintiffs' counsel, whose name and address are:

**Martin W. Palmer, Esquire**
**Joseph K. Lopez, Jr., Esquire**
**Dennis E. Lopez, Esquire**
**Palmer Lopez, P.A.**
**17543 Darby Lane**
**Lutz, Florida 33558**

within 20 days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original defenses with the Clerk of this Court either before service on Plaintiffs' attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Amended Complaint.

WITNESS my hand and the seal of said Court this __ March 4, 2026

VICTOR D. CRIST
Clerk of the Court

(SEAL)

By: ______________________

As Deputy Clerk

**IMPORTANT**

A lawsuit has been filed against you. You have twenty (20) calendar days after this Summons is served on you to file a written response to the attached Complaint with the Clerk of this Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court, you must also mail a copy of your written response to the "Plaintiff/Plaintiffs' Attorney" named below.

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Persons with a disability who need any accommodation in order to participate should call ADA Coordinator, Hillsborough County Courthouse, 800 East Twiggs Street, Tampa, Florida at 813-272-6513 within two (2) working days of your receipt of this notice; if you are hearing impaired call (800) 955-8771; if you are voice impaired, call (800) 9558770.**

Marty W. Palmer, Esquire
Joseph K. Lopez, Jr., Esquire
Dennis E. Lopez, Esquire
Palmer Lopez, P.A.
17543 Darby Lane
Lutz, Florida 33558
813-506-5651

**IMPORTANTE**

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presenter su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta

la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen ostros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica. Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera used enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

**IMPORTANT**

Des poursuites judiciaries ont ete enterprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour despoer une response ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous estes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risqué de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocet. Si vous ne connaissez pas d'avocat, vous pourriez telephone a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones). Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenie ou expediter une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocet) nomme ci-dessous.

Filing # 242909980 E-Filed 03/03/2026 09:34:47 AM

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**

AARON WILLIAMS,

Plaintiff,

Case No.:
Division:

v.

ANTONIO'S CIGAR, CO. d/b/a
LIT CIGAR AND MARTINEE LOUNGE, and
912 FRANKLIN STREET, LLC,

Defendants.
_____________________________/

**COMPLAINT**

COMES NOW the Plaintiff, AARON WILLIAMS, by and through the undersigned attorney, and files this Complaint against Defendants, ANTONIO'S CIGAR, CO. d/b/a LIT CIGAR AND MARTINEE LOUNGE (hereinafter, "ANTONIO'S CIGAR"), and 912 FRANKLIN STREET, LLC, and respectfully states unto the Court the following:

**GENERAL ALLEGATIONS**

1. This is an action for damages in excess of $50,000.00.

2. The cause of action alleged herein occurred in Hillsborough County, Florida.

3. At all material times, Plaintiff, AARON WILLIAMS, was and is a resident of Hillsborough County, Florida.

4. Upon information and belief, at all material times, Defendant, ANTONIO'S CIGAR, was and is a Florida for profit corporation, authorized to and doing business as a bar known as Lit Cigar and Martinee Lounge, located at 908 N Franklin St, Tampa, FL 33602, Hillsborough County, Florida.

5. Upon information and belief, at all material times, Defendant, 912 FRANKLIN STREET, LLC, was and is a for profit corporation with a principal address of 1523 North Franklin Street, Tampa, FL 33602, authorized to do and was doing business in the state of Florida.

6. At all material times, Defendant, ANTONIO'S CIGAR, was operating a lounge/bar at 908 N. Franklin Street, Tampa, Florida 33602.

7. At all material times, Defendant, 912 FRANKLIN STREET, LLC, was the owner of the premises of the property located at 908 N. Franklin Street, Tampa, Florida 33602.

8. On or about August 18, 2025, Plaintiff, AARON WILLIAMS, was at a patron at the establishment, attending with friends of his.

9. At that date and location, an argument occurred inside between, Plaintiff, AARON WILLIAMS, his friends and another group of individuals.

10. Upon information and belief, the other group of individuals was ejected from the front door.

11. A short period of time later, Plaintiff, AARON WILLIAMS, and his friends were allowed to leave the premises through the front door. Upon walking into the doorway to exit, Plaintiff, AARON WILLIAMS, was shot multiple times by one of the individuals that had previously been arguing with Plaintiff.

**<u>COUNT I – NEGLIGENT SECURITY AGAINST DEFENDANT, ANTONIO'S CIGAR</u>**

12. Plaintiff hereby adopts and re-alleges paragraphs 1-11 contained above as if fully set forth herein.

13. On or about August 18, 2025, Plaintiff, AARON WILLIAMS, was a business invitee of the establishment, ANTONIO'S CIGAR.

14. That as of that date and time, Defendant, ANTONIO'S CIGAR, had a history of numerous acts of violence on or near its premises.

15. Accordingly, and at all material times, Defendant, ANTONIO'S CIGAR, through its agents, staff and/or employees, owed a duty to Plaintiff, AARON WILLIAMS, to exercise reasonable and ordinary care to maintain the premises, in a condition reasonably safe for use by its invitees, guests, and the public. This includes an obligation to provide a safe means of egress for Plaintiff and to warn of known or concealed perils and those existing as a result of the foreseeable zone of risk created by past criminal actions.

16. Defendant, ANTONIO'S CIGAR, breached this duty by failing to provide adequate security. Specifically, Defendant, ANTONIO'S CIGAR:

(a) By failing to ensure that the shooter had/was evacuated from the area of egress before allowing Plaintiff to leave the establishment;

(b) By allowing the two participants in the argument to be put back into close proximity to one another shortly after the argument ensued;

(c) By failing to involve law enforcement despite a history of violence at the establishment;

(d) By failing to maintain an adequate number of trained staff to maintain the premises in a reasonably safe manner to avoid injury;

(e) By failing to adequately train staff to avoid/de-escalate situations such as this;

(f) By failing to warn Plaintiff that a dangerous situation existed, a shooter, near the area of egress;

(g) Failing to act to prevent injury to Plaintiff when reasonable care was required;

(h) Failing to protect its business guests/invitees from reasonably foreseeable harm;

(i) Failing to adequately supervise its employees;

(j) Failing to establish appropriate Risk Management policies, procedures, and training to ensure a safe environment and to protect business guests/invitees from bodily injury.

17. As a direct and proximate result of Defendant, ANTONIO CIGAR's, negligence, Plaintiff, AARON WILLIAMS, suffered serious bodily injury and/or aggravation of pre-existing condition and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and/or aggravation of a previously existing condition. The losses are either permanent or continuing and Plaintiff, will suffer the losses in the future.

WHEREFORE, Plaintiff, AARON WILLIAMS, demands judgment against Defendant, ANTONIO'S CIGAR, for damages in an amount in excess of $50,000.00, together with costs incurred and attorney's fees if applicable herein, and further demands a trial by jury on all issues so triable.

**COUNT II – PREMISES LIABILITY as to Defendant, 912 FRANKLIN STREET, LLC**

18. Plaintiff hereby adopts and re-alleges paragraphs 1-17 contained above as if fully set forth herein.

19. At all material times, Defendant, 912 FRANKLIN STREET, LLC, was the owner of the subject premises.

20. At all material times, Defendant, 912 FRANKLIN STREET, LLC, retained possession of the subject premises.

21. At all material times, Defendant, 912 FRANKLINE STREET, LLC, retained control of the common areas including the area of egress, at the subject establishment.

22. Accordingly, and at all material times, Defendant, ANTONIO'S CIGAR, through its agents, staff and/or employees, owed a non-delegable duty to Plaintiff, AARON WILLIAMS, to

exercise reasonable and ordinary care to maintain the premises, in a condition reasonably safe for use by its invitees, guests, and the public. This includes an obligation to provide a safe means of egress for Plaintiff and to warn of known or concealed perils and those existing as a result of the foreseeable zone of risk created by past criminal actions. This further includes an obligation to maintain the common areas (area of egress) in a reasonably safe condition.

23. Defendant, 912 FRANKLIN STREET, LLC, breached these duties by negligently failing to provide adequate security. Specifically, Defendant, 912 FRANKLIN STREET, LLC:

(a) By failing to ensure that the shooter had/was evacuated from the area of egress before allowing Plaintiff to leave the establishment;

(b) By allowing the two participants in the argument to be put back into close proximity to one another shortly after the argument ensued;

(c) By failing to involve law enforcement despite a history of violence at the establishment;

(d) By failing to maintain an adequate number of trained staff to maintain the premises in a reasonably safe manner to avoid injury;

(e) By failing to adequately train staff to avoid/de-escalate situations such as this;

(f) By failing to warn Plaintiff that a dangerous situation existed, a shooter, near the area of egress;

(g) Failing to act to prevent injury to Plaintiff when reasonable care was required;

(h) Failing to protect its business guests/invitees from reasonably foreseeable harm;

(i) Failing to adequately supervise its employees;

(j) Failing to establish appropriate Risk Management policies, procedures, and training to ensure a safe environment and to protect business guests/invitees from bodily injury; and;

(k) Failing to ensure a safe common area, that is, the area of egress where the subject incident occurred.

24. As a direct and proximate result of Defendant, 912 FRANKLIN STREET, LLC's, negligence, Plaintiff, AARON WILLIAMS, suffered serious bodily injury and/or aggravation of pre-existing condition and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and/or aggravation of a previously existing condition. The losses are either permanent or continuing and Plaintiff, will suffer the losses in the future.

WHEREFORE, Plaintiff, AARON WILLIAMS, demands judgment against Defendant, 912 FRANKLIN STREET, LLC, for damages in an amount in excess of $50,000.00, together with costs incurred and attorney's fees if applicable herein, and further demands a trial by jury on all issues so triable.

DATED this 3rd day of March 2026.

**PALMER LOPEZ, P.A.**

*/s/ Joseph K. Lopez, Jr.*

Joseph K. Lopez, Jr.
Florida Bar No.: 106080
Martin W. Palmer, Esquire
Florida Bar No.: 0150347
Dennis E. Lopez, Esquire
Florida Bar No.: 1048768
Palmer Lopez, P.A.
17543 Darby Lane

Lutz, FL 33558
Phone: (813) 506-5651
Fax: (813) 506-5654
Email: service@palmerlopez.com
jklopez@palmerlopez.com

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**

AARON WILLIAMS,

Plaintiff,

Case No.:
Division:

v.

ANTONIO'S CIGAR, CO. d/b/a
LIT CIGAR AND MARTINEE LOUNGE, and
912 FRANKLIN STREET, LLC,

Defendants.
______________________________/

**DESIGNATION OF ELECTRONIC MAIL ADDRESSES AND REQUEST FOR DESIGNATION OF ELECTRONIC MAIL ADDRESSES**

COMES NOW the Plaintiff, AARON WILLIAMS, by and through the undersigned attorneys and pursuant to the Florida Supreme Court's Amendment to the Florida Rules of Civil Procedure No. SC 10-2101, and hereby designates undersigned counsel's primary electronic mail address for this matter and respectfully requests all other counsel provide a primary electronic mail address and secondary electronic mail address for this matter, so that all attorneys may comply with the Florida Supreme Court's Amendment to the Florida Rules of Civil Procedure.

Primary Electronic Mail Address: service@palmerlopez.com

Secondary Electronic Mail Addresses: jklopez@palmerlopez.com
ckomer@palmerlopez.com

**CERTIFICATE OF SERVICE**

THE UNDERSIGNED HEREBY CERTIFIES that a true and correct copy of the foregoing has been furnished to Defendant with a copy of the Complaint.

**PALMER LOPEZ, P.A.**

*/s/ Joseph K. Lopez*
Joseph K. Lopez, Jr.

Florida Bar No.: 0106080
Martin W. Palmer
Florida Bar No.: 0150347
Dennis E. Lopez
Florida Bar No.: 1048768
17543 Darby Lane
Lutz, FL 33558
Phone: (813) 506-5651
Fax: (813) 506-5654
E-Mail: service@palmerlopez.com
jklopez@palmerlopez.com
**Attorneys for Plaintiff**

**IN THE CIRCUIT/COUNTY COURT OF THE THIRTEENTH JUDICIAL CIRCUIT, IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**

AARON WILLIAMS

Plaintiffs,

v.

Case Number: 26-CA-002416
Division J

ANTONIO'S CIGAR. CO.; 912 FRANKLIN STREET, LLC

Defendants.

---

**DIFFERENTIATED CASE MANAGEMENT ORDER AND NOTICE OF HEARING ON 10/1/2026 AT 9:00 AM**

**(GENERAL CIRCUIT CIVIL CASES FILED ON OR AFTER JANUARY 1, 2025)**

THIS CAUSE comes before the Court in accordance with Florida Rule of Civil Procedure 1.200 and Thirteenth Judicial Circuit Administrative Order S-2024-085 (*Circuit Civil Differentiated Case Management Plan*) (the "**Case Management Plan**") or any successor administrative order.

Accordingly, it is now

**FOUND, ORDERED,** and **ADJUDGED** that:

1. **Designation of Case.** This case is preliminarily designated as a *General* civil case, as defined by Florida Rule of Civil Procedure 1.200.

2. **Plaintiff's Obligation to Serve DCM Order on All Defendants.** Consistent with the Case Management Plan, this Differentiated Case Management Order and Notice of Hearing (the "**DCM Order**") has been generated automatically upon the filing of the complaint and must be provided to Plaintiff along with the summons. Plaintiff is **DIRECTED** to serve the DCM Order on each and every named defendant in the same manner and at the same time as the complaint itself is served.

3. **Conformity with Time Standards.** The deadlines established in this DCM Order are set in contemplation of the time standards specified in Florida Rule of General Practice and Judicial Administration 2.250(a)(1)(B).

Filed 3/4/2026 2:32:45 PM Hillsborough County Clerk of the Circuit Court

4. **Procedure for Modification of Deadlines.** Counsel or any self-represented parties, or both, may seek to modify the deadlines set forth in this order by either:

   a. Filing a motion in accordance with Florida Rule of Civil Procedure 1.200(e)(3) and setting it for hearing; or

   b. Stipulating to new deadlines and submitting an Amended Differentiated Case Management Order. The Amended Differentiated Case Management Order ("**Amended DCM Order**") form is available under the "Forms" tab of the undersigned's page at http://www.fljud13.org. The Amended DCM Order must include a date for a court-ordered case management conference (the "**Court-Ordered Case Management Conference**"). Hearing time for the Court-Ordered Case Management Conference should be secured on either a Uniform Motion Calendar ("**UMC**") docket or a 15-minute hearing docket.

5. **Procedure for Setting Firm Trial Date.** The deadlines set forth in this DCM Order contemplate a projected trial date within the time standards specified in Florida Rule of General Practice and Judicial Administration 2.250(a)(1)(B). A firm trial date will be set through entry of a Uniform Order Setting Trial and Pretrial at the Court-Ordered Case Management Conference or as otherwise provided in this order.

6. **Court-Ordered Case Management Conference.** It is appropriate to set a Court-Ordered Case Management Conference prior to the close of fact discovery to both assess the progress of the case and set a firm trial date.

   a. **Date and Time for Court-Ordered Case Management Set Below.** A date and time for the Court-Ordered Case Management Conference is set below.

   b. **Method of Conducting Court-Ordered Case Management Conference:** The Court-Ordered Case Management Conference will be conducted remotely through the use of the following technology and connection instructions:

      Zoom link is https://zoom.us/j/5765425279?pwd=aDJtb3EzcmRGWVRoaXB3SEdkUk9vdz09

      Meeting ID: 576 542 5279 Password: Not Required

   c. **Attendance Mandated.** Counsel and any self-represented parties **MUST ATTEND** unless otherwise excused by the Court and must be prepared to discuss selection of a firm trial date and corresponding pretrial conference date and time.

   d. **Process for Securing Excusal from Attending the Court-Ordered Case Management Conference:**

i. **Automatic Excusal.**

1. Unless otherwise ordered by the presiding judge, counsel or any self-represented parties, or both, are automatically excused from attending the Court-Ordered Case Management Conference if a Uniform Order Setting Trial and Pretrial has been submitted to and signed by the Court at least 30 days before the date of the Court-Ordered Case Management Conference; and

2. Any party seeking to invoke this automatic excusal provision should notify the judicial assistant by email sent to the division email address within 3 business days of the date the Uniform Order Setting Trial and Pretrial is signed.

ii. **Discretionary Excusal.**

1. Counsel or self-represented parties, or both, may seek a discretionary excusal from the Court-Ordered Case Management Conference by filing a motion and submitting an agreed proposed order excusing their attendance on one of the following grounds:

   a. The Court has signed an Amended DCM Order, either by stipulation or by filing a motion and setting a hearing, AND the Amended DCM Order sets a new Court-Ordered Case Management Conference; or

   b. Counsel has otherwise demonstrated good cause to believe that the case is otherwise in full compliance with the Case Management Plan.

e. **Failure to Attend Court-Ordered Case Management Conference.** The failure to attend the Court-Ordered Case Management Conference may result in the case being set for a trial date without input of the absent counsel or self-represented party, or both; dismissal of the complaint without prejudice; entry of a judicial default; monetary sanctions against counsel or any self-represented parties, or both; or any other sanctions deemed appropriate by the presiding judge.

7. **Firm Trial Date to be Set by Uniform Order Setting Trial and Pretrial.** Once a firm trial date is selected, counsel will be directed to prepare and submit through the Florida E-Portal (the "**Portal**") a Uniform Order Setting Trial and Pretrial, which is available under the "Forms" tab of the undersigned's page at http://www.fljud13.org. The Uniform Order Setting Trial and Pretrial will require calculation of additional deadlines in a specified manner.

8. **Requirement to Review and Comply with Administrative Order for Circuit Civil Division.** Counsel and any self-represented parties are **DIRECTED** to review and comply with all provisions of Administrative Order S-2024-046 (*Circuit Civil Division*), and any successive administrative order.

9. **Certificate of Conferral for Non-Dispositive Motions.**

   a. **When Required.** Parties are required to confer prior to filing motions in accordance with Florida Rule of Civil Procedure 1.202.

   b. **Cancelation of Hearing/Denial of Motion Filed Without Certificate of Conferral.** Counsel and any self-represented parties should anticipate that a hearing set on a motion that lacks such a certification will be canceled and the motion may be denied without a hearing for failure to comply with this requirement.

   c. **Form of Certificate of Conferral.** The certificate of conferral should be substantially in the following form:

   **Certificate of Conferral Prior to Filing**

   ***"I certify that prior to filing this motion, I attempted to resolve the matter by discussing the relief requested in this motion by*** *[date and method of communication (select one of the following: in person, telephone, or video conference)]* ***with the opposing party or counsel and*** *[the opposing party or counsel did not agree to that the motion could be resolved without the necessity of a hearing] OR [the opposing party or counsel did not respond and (describe with particularity all of the efforts undertaken to accomplish dialogue with the opposing party or opposing party's counsel prior to filing the motion)]****."***

10. **Discovery Provisions.**

    a. **Fact Discovery.**

       i. All discovery must be served in time for a timely response to be received prior to the deadline for completion of fact discovery.

       ii. All non-expert witness depositions must occur prior to the deadline for completion of fact discovery.

       iii. Failure to timely complete discovery by the deadline for completion of fact discovery may result in, among other things, exclusion of evidence or other sanctions, or both.

b. **Expert Discovery.**

i. Expert disclosure must occur by the deadline indicated below.

ii. Contemporaneous with disclosure of each expert, the disclosing party must provide to all other parties:

1. No less than five proposed deposition dates, all of which must be prior to the deadline to complete expert discovery; and

2. For each expert:

a. Identify the expert's area of expertise;

b. Identify the subject matter on which the expert is expected to testify;

c. Summarize the substance of the facts and opinions to which the expert is expected to testify; and

d. Summarize the grounds for each opinion.

iii. The court may preclude an expert from testifying outside of the disclosed opinions.

iv. All expert witness depositions must be conducted prior to the deadline for completion of expert discovery.

v. It is the responsibility of counsel to select experts who:

1. Are prepared to make themselves available for deposition within the expert discovery period; and

2. Are prepared to respond promptly to requests for deposition dates.

vi. If an expert cannot be deposed prior to the deadline for completion of expert discovery despite timely and reasonable efforts of opposing counsel to secure deposition dates, that expert's testimony may be excluded at trial.

11. **Deadlines.** The deadlines set forth below are **ESTABLISHED** and will **GOVERN** this case and will be strictly enforced by the Court. Counsel and any self-represented parties are **DIRECTED** to review, calendar, and abide by them:

| Action or Event | Date |
|---|---|
| **Complaint filing date.** | 03/03/2026 |
| **Deadline for service of complaint.** [120 days after filing of complaint; *see* Rule 1.070(j), Fla. R. Civ. P.] | 07/01/2026 |
| **Deadline for adding parties.** [150 days after filing of complaint; subject to Rule 1.210, Fla. R. Civ. P.] | 07/31/2026 |
| **Deadline for service under extensions.** [180 days after filing of complaint; *see* Rule 1.070(j), Fla. R. Civ. P.] | 08/31/2026 |
| **Deadline for filing all objections to pleadings.** [180 days after filing of complaint.] | 08/31/2026 |
| **Deadline for resolution of all objections to pleadings.** [200 days after filing of complaint.] | 09/22/2026 |
| **Court-Ordered Case Management Conference.** NOTE: This hearing will be conducted remotely. Please see paragraph 6(b) for connection instructions. [210 days after filing of complaint.] | 10/01/2026 At 9:00 AM |
| **Deadline for completion of fact discovery.** [270 days after filing of complaint.] | 11/30/2026 |
| **Deadline for filing motion to compel discovery.** [284 days after filing of complaint.] | 12/14/2026 |
| **Plaintiff's expert disclosure deadline.** [300 days after filing of complaint.] | 12/28/2026 |
| **Defendant's expert disclosure deadline.** [330 days after filing of complaint.] | 01/27/2027 |
| **Rebuttal expert disclosure deadline.** | 02/10/2027 |

| | |
|---|---|
| [344 days after filing of complaint.] | |
| **Deadline for completion of compulsory medical exam, if applicable and requested ("CME").**<br>[390 days after filing of complaint; subject to Rule 1.360(1)(A), Fla. R. Civ. P.] | 03/29/2027 |
| **Deadline for filing and service of motions for summary judgment.**<br>[400 days after filing of complaint.] | 04/07/2027 |
| **Deadline for completion of alternative dispute resolution.**<br>[420 days after filing of complaint.] | 04/27/2027 |
| **Deadline for completion of expert discovery.**<br>[420 days after filing of complaint.] | 04/27/2027 |
| **Deadline for filing of all pretrial motions excluding motions in limine.**<br>[450 days after filing of complaint.] | 05/27/2027 |
| **Deadline for resolution of all pretrial motions, including motions for summary judgment and *Daubert* motions but excluding motions in limine.**<br>[500 days after filing of complaint.] | 07/16/2027 |
| **Deadline for filing of all motions in limine.**<br>[520 days after filing of complaint.] | 08/05/2027 |
| **Deadline for resolution of all motions in limine.**<br>[539 days after filing of complaint.] | 08/24/2027 |
| **Month and year of the projected trial term.**<br>[540 days after filing of complaint; *see* Florida Rule of General Practice and Judicial Administration 2.250(a)(1)(B); firm trial date will be set by entry of a Uniform Order Setting Trial and Pretrial (Revised January 1, 2025).] | August, 2027 |

ENTERED by the undersigned judge on the date imprinted below.

26-CA-002416 3/4/2026 2:32:45 PM

Filed 3/4/2026 2:32:45 PM Hi Court

26-CA-002416 3/4/2026 2:32:45 PM
Alissa McKee Ellison Circuit Judge

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**

AARON WILLIAMS,

Plaintiff,

v.

Case No.:
Division:

ANTONIO'S CIGAR, CO. d/b/a
LIT CIGAR AND MARTINEE LOUNGE, and
912 FRANKLIN STREET, LLC,

Defendants.
_______________________________________/

**PLAINTIFF'S NOTICE OF COMPLIANCE WITH RULE 1.280(a) INITIAL DISCLOSURES**

COMES NOW the Plaintiff, AARON WILLIAMS, by and through the undersigned counsel and hereby file Notice of Compliance with Florida Rule of Civil Procedure 1.280(a) and hereby give notice of serving these initial disclosures.

**CERTIFICATE OF SERVICE**

THE UNDERSIGNED HEREBY CERTIFIES that a true and correct copy of the above and foregoing has been electronically filed with the Court through the Florida E-File Portal and furnished to Defendants with a copy of the Complaint.

**PALMER LOPEZ, P.A.**

*/s/ Joseph K. Lopez, Jr.*
Joseph K. Lopez, Jr., Esquire
Florida Bar No.: 106080
Martin W. Palmer, Esquire
Florida Bar No.: 0150347
Dennis E. Lopez, Esquire
Florida Bar No.: 1048768
17543 Darby Lane
Lutz, FL 33558
Phone: (813) 506-5651
Fax: (813) 506-5654

E-mail: service@palmerlopez.com

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT**
**IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**

AARON WILLIAMS,

Plaintiff,

v.

Case No.: 26-CA-002416
Division: J

ANTONIO'S CIGAR, CO. d/b/a
LIT CIGAR AND MARTINEE LOUNGE, and
912 FRANKLIN STREET, LLC,

Defendants.
_____________________________________/

**PLAINTIFFS' INITIAL DISCOVERY DISCLOSURES PURSUANT TO FLORIDA RULES OF CIVIL PROCEDURE 1.280(a)**

COMES NOW the Plaintiff, AARON WILLIAMS, by and through the undersigned counsel and in accordance with Rule 1.280(a) of the Florida Rules of Civil Procedure, hereby files the following initial discovery disclosures:

**1.280(a)(1)(A):**
**INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION**

1. Aaron Williams
   c/o Joseph K. Lopez, Jr., Esquire
   17543 Darby Ln
   Lutz, FL 33558
   (813) 506-5651
   JKLopez@PalmerLopez.com
   Incident and damages

2. Erica Knight
   2101 E 23rd Ave
   Tampa, FL 33605
   Incident and damages

3. Mario Williams
   2101 E 23rd Ave
   Tampa, FL 33605

4. Travis Farley
   Incident and damages

5. Antonio P. Prieto
   4310 Carrollwood Village Drive
   Tampa, FL 33618
   Incident and damages

6. Jason Accardi
   1523 North Franklin Street
   Tampa, Fl 33602
   Incident and damages

7. Michael Albrink, MD
   2 Tampa General Circle,
   Tampa, FL 33606
   Incident and damages

8. Sarah Farach, MD
   1 Tampa General Circle,
   Tampa, FL 33606
   Incident and damages

9. Alexandra Darien, MD
   2 Tampa General Circle
   Tampa, FL 33606
   Incident and damages

10. David T. Watson, MD
    5901 E Fowler Ave, Suite 100
    Temple Terrace, FL 33617
    *and*
    909 N Dale Mabry Hwy
    Tampa, FL 33609
    Incident and damages

11. All treating physicians/healthcare providers and/or records custodian:
    James A. Haley Veterans' Hospital
    13000 Bruce B. Downs Boulevard
    Tampa, FL 33612-4745
    Incident and damages

12. All treating physicians/healthcare providers and/or records custodian:
    Tampa General Hospital
    1 Tampa General Cir
    Tampa, FL 33606

Incident and damages

13. All treating physicians/healthcare providers and/or records custodian:
    TGH Rehabilitation Hospital
    1307 W. Kennedy Boulevard
    Tampa, FL 33606
    Incident and damages

14. All treating physicians/healthcare providers and/or records custodian:
    USF Health
    2 Tampa General Circle
    Tampa, FL 33606
    Incident and damages

15. All treating physicians/healthcare providers and/or records custodian:
    Florida Orthopaedic Institute
    909 N Dale Mabry Hwy
    Tampa, FL 33609
    Incident and damages

16. All treating physicians/healthcare providers and/or records custodian:
    Florida Orthopaedic Institute
    5901 E Fowler Ave, Suite 100
    Temple Terrace, FL 33617
    Incident and damages

17. Records custodian:
    City of Tampa – Tampa Police Department
    3001 W. Dr. Martin Luther King Jr. Blvd
    Tampa, FL 33607
    Incident and damages

18. Records custodian:
    VHA Office of Integrated Veteran Care
    P.O. Box 700
    Spring City, PA 19475
    Incident and damages

19. Employers and individuals within:

    a. 912 FRANKLIN STREET, LLC
       c/o JASON ACCARDI, Registered Agent
       1523 NORTH FRANKLIN STREET
       TAMPA, FL 33602
    b. ANTONIO'S CIGAR, CO. d/b/a
       LIT CIGAR AND MARTINEE LOUNGE

c/o ANTONIO P. PRIETO, Registered Agent
4310 CARROLLWOOD VILLAGE DRIVE
TAMPA, FL 33618

20. Any and all medical providers identified in the medical records in this case.

21. Any and all other witnesses to the incident, including those who were present did not directly witness the incident.

22. Any and all individuals, agents, records custodians identified in Plaintiff's medical records.

23. Any and all rebuttal or impeachment witnesses necessary to rebut or impeach the opinions and testimony offered by Defendant.

24. Any and all individuals identified in the Plaintiff's discovery responses.

25. Any and all individuals identified in the Defendant's discovery responses.

26. Any and all witnesses, expert or otherwise, of the Defendant.

27. Any and all expert witnesses, who due to the nature of continuing discovery, may hereafter be retained in anticipation of giving expert opinion testimony at trial, subject to prompt and timely disclosure thereof to Defendant.

Additional individuals may be disclosed as further information is discovered during the course of this investigation.

**<u>1.280(a)(1)(B): MATERIALS IN SUPPORT</u>**

1. Medical and billing records of Plaintiff's healthcare providers, to wit:

    a. James A. Haley Veterans' Hospital
    13000 Bruce B. Downs Boulevard
    Tampa, FL 33612-4745

    b. Tampa General Rehabilitation Hospital
    1307 W Kennedy Blvd
    Tampa, FL 33606

2. Medical and billing records have been requested and will be provided upon receipt.

3. Medical records and/or diagnostic studies of any and all treating physicians, medical providers, and medical facilities pertaining to the medical care, treatment, and/or services rendered to or on behalf of Plaintiff.

4. Medical billing of any and all treating physicians, medical providers, and medical facilities pertaining to the medical care, treatment, and/or services rendered to or on behalf of Plaintiff.

5. Plaintiff's U.S. Department of Veterans Affairs insurance card.

6. All documents and items produced by Defendant(s).

7. Photographs of Plaintiff.

8. Videos of Plaintiff.

9. Any and all records (including policies and procedures) of the Defendant pertaining to the incident that is the subject of this matter.

10. Curriculum vitae of any and all treating physicians and medical providers providing medical care, treatment, and/or services to or on behalf of Plaintiff concerning the subject incident (in physicians' possession).

11. Any and all requests for production of documents or items, responses, and exhibits thereto that will be or have been served in this matter.

12. Any and all exhibits listed by Defendant(s).

13. Any and all exhibits listed hereafter and noticed to Defendant(s).

14. Any and all radiographs or images depicting injuries to Plaintiff.

15. Any and all photographs of the Plaintiff.

16. Any and all reports of any medical providers, vocational loss experts, and other expert witnesses.

17. Any and all later disclosed exhibits as discovery is continuing.

Plaintiff reserves the right to supplement this list as additional information becomes available during the course of discovery.

**<u>1.280(a)(1)(C): Damages</u>**

1. Past medical bills/expenses from Plaintiff's medical providers:

   $54,173.13 – charges to date, based on medical bills in Plaintiff's possession at this time. Billing records have been requested and will be provided upon receipt. Many are not yet in Plaintiff's possession.

2. Loss of capacity to earn in the future – Plaintiff is unable to provide an assessment at this time; however, at present, he is unable to work and does claim a loss of capacity to earn into the future. His long-term outlook is dependent on healing and will be assessed by a vocational rehabilitation expert if a complete recovery is not made by the time the case is heading to trial.

3. Past wage loss damages are being claimed. Plaintiff was working for Allied Universal Security Services making approximately $19.00 per hour and working roughly 35 hours per week. He has not returned to work since the incident. At present, that is approximately $18,620.

4. Future medical/economic expenses are claimed but are largely unknown at this point as Plaintiff's life care planner has not completed an evaluation. Additionally, Plaintiff's injury and prognosis are evolving.

5. Past non-economic damages (pain and suffering, etc.) are claimed but are not required by Plaintiff to be quantified at this time.

6. Future non-economic damages (pain and suffering, etc.) are claimed but are not required by Plaintiff to be quantified at this time.

**1.280(a)(1)(D): INSURANCE COVERAGE**

None in Plaintiff's possession at this time. Plaintiff reserves the right to supplement this list as additional information becomes available during the course of discovery.

**CERTIFICATE OF SERVICE**

THE UNDERSIGNED HEREBY CERTIFIES that a true and correct copy of the foregoing has been furnished to Defendant with a copy of the Complaint.

**PALMER LOPEZ, P.A.**

*/s/ Joseph K. Lopez, Jr.*

Joseph K. Lopez, Jr., Esquire
Florida Bar No.: 106080
Martin W. Palmer, Esquire
Florida Bar No.: 0150347
Dennis E. Lopez, Esquire
Florida Bar No.: 1048768
17543 Darby Lane
Lutz, FL 33558
Phone: (813) 506-5651

Fax: (813) 506-5654
E-mail: service@palmerlopez.com
jklopez@palmerlopez.com
*Attorneys for Plaintiff*

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT**
**IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**

AARON WILLIAMS,

Plaintiff,

v.

Case No.:
Division:

ANTONIO'S CIGAR, CO. d/b/a
LIT CIGAR AND MARTINEE LOUNGE, and
912 FRANKLIN STREET, LLC,

Defendants.
_______________________________/

**NOTICE OF SERVING FIRST SET OF INTERROGATORIES**
**TO DEFENDANT, 912 FRANKLIN STREET, LLC**

COMES NOW, the Plaintiff, AARON WILLIAMS, by and through the undersigned counsel, and hereby files this Notice of Serving First Set of Interrogatories to Defendant, 912 FRANKLIN STREET, LLC.

**CERTIFICATE OF SERVICE**

THE UNDERSIGNED HEREBY CERTIFIES that a true and correct copy of the above and foregoing has been electronically filed with the Court through the Florida E-File Portal, and furnished to Defendant with a copy of the Complaint.

**PALMER LOPEZ, P.A.**

*/s/ Joseph K. Lopez, Jr.*
Joseph K. Lopez, Jr.
Florida Bar No.: 106080
Martin W. Palmer, Esquire
Florida Bar No.: 0150347
Dennis E. Lopez
Florida Bar No.: 1048768
Palmer Lopez, P.A.
17543 Darby Lane
Lutz, FL 33558

Phone: (813) 506-5651
Fax: (813) 506-5654
Email: service@palmerlopez.com
jklopez@palmerlopez.com

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**

AARON WILLIAMS,

Plaintiff,

v.

Case No.: 26-CA-002416
Division: J

ANTONIO'S CIGAR, CO. d/b/a
LIT CIGAR AND MARTINEE LOUNGE, and
912 FRANKLIN STREET, LLC,

Defendants.
_______________________________/

**PLAINTIFF'S FIRST SET OF INTERROGATORIES
TO DEFENDANT, 912 FRANKLIN STREET, LLC**

Plaintiff, AARON WILLIAMS, by and through his undersigned attorneys, propounds their first set of Interrogatories numbered 1-23 to the Defendant, 912 FRANKLIN STREET, LLC.

**DEFINITION AND INSTRUCTIONS**

1. In answering these interrogatories, you are required to furnish all information that is presently available to you or that can be obtained through reasonable inquiry, including information in the possession of your attorneys, accountants, advisors or other persons directly or indirectly employed at, or connected with you or your attorneys, and anyone else subject to your control.

2. Answer each interrogatory separately and fully in writing, under oath, unless it is objected to, in which event the reasons for each objection must be stated in lieu of the answer. If you determine that any interrogatory is not applicable and consequently deserves no answer, state in detail why it is not applicable.

3. Each interrogatory is intended to, and does request that each and every part thereof be answered as though it were the subject of, and asked by, a separate interrogatory.

4. If these interrogatories cannot be answered in full, answer to the extent possible, specify the reason for your inability to answer the remainder, and state whatever information and knowledge you have regarding the unanswered portion.

5. With respect to each interrogatory, and subpart thereof, in addition to providing the information requested, also:

a) Identify each document relied upon or which forms a basis for your answer to these interrogatories;
b) Identify each person who assisted or participated in preparing and/or supplying any of the information given in answer to or relied upon in preparing answers to these interrogatories;
c) State whether the information furnished is within your personal knowledge and, if not, the names, if known, of each person to whom the information is a matter of personal knowledge; and
d) If you maintain that any document or record which relates to your interrogatory answer has been destroyed, state the content of the document, the location of any copies of said document, the date the document was destroyed and the name of the person who ordered or authorized the destruction.

6. If you claim that as an attorney-client privilege or the attorney work-product doctrine is applicable to any document the identification of which is sought by the interrogatories, state and identify as to each document:

a) The date the document was prepared or executed;
b) Drafter or author of document;
c) Each and every person who prepared or assisted in the preparation of the document;
d) Each and every person who received the document;
e) Present location and custodian of the document; and
f) Explain the circumstanced upon which you base your claim of privilege.

7. Grammar and syntax as used in these interrogatories shall be construed and interpreted to give proper meaning to its context. By way of illustration, and not by way of limitation, the singular may be construed as the plural, the plural, the singular, and the use of any gender or tense may be construed to include all genders and tenses.

8. "Complaint" means the Complaint in this action.

9. "Document" means any written or graphic matter or other means of preserving thought or expression, and all tangible things from which information can be processed or transcribed, including the original and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including, but not limited to correspondence, memoranda, notes, messages, letters, telegrams, teletype, telefax bulletins, meetings or other communications, inter-office telephone calls, diaries, data, minutes, books, reports, charts, ledgers, invoices, worksheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, cancelled checks, transcripts, statistics, surveys, magazine or newspaper articles, releases (any and all drafts, alterations and modifications, changes and amendments of any of the foregoing), graphs or aural records or representations of any kind, including without limitation, photographs, charts, graphs microfiche, microfilm, videotape, recording, motion pictures and electronic, mechanical or electronic recordings or representations of any kind (including without limitation, tapes, cassettes, discs and including the file and file cover).

10. "Communications" means any oral or written statement, dialogue, colloquialism, discussion, conversation and agreement.

11. The term "all documents" means every document or group of documents for communication as above-defined known to you and every such document or communication which can be located or discovered by reasonably diligent efforts.

12. The term "you" and "your" means the party to whom this Interrogatory is addressed, including the party's employees and agents and all other persons acting or purporting to act on the party's behalf, and, unless privileged, the party's attorneys.

13. "Relate to", "relates to", "related to", and "relating to", means any information which directly or indirectly pertains to, is connected with, or reflects upon a stated subject matter.

14. "Person" means any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm or other business enterprise, governmental body, group of natural persons or other entity.

15. "Identify", when used with reference to a natural person, means state:
   a) his full name and address (or if the present is not know, his last known address);
   b) the full name and address of each of his employers, each corporation of which he is an officer or director and each business in which he is a principal;
   c) his present (or if the present is not known, his last known) position and his position or positions at the time of the act to which the interrogatory relates;
   d) if the person is an employee or agent, each position he has ever held with you and the date such positions were held; and
   e) such other information sufficient to enable Plaintiff to identify the person.

16. "Identify", when used with reference to any entity other than a natural person, means:
   a) state the full name of the entity, the type of entity (e.g., corporation, partnership, etc.), the address of its business activity and, if it is a corporation, the jurisdiction under the laws of which it has been organized and the date of such organization;
   b) identify each of the entities' officers, directors, shareholders, or other principals; and
   c) state whatever other information you may have concerning the existence or identity of the entity.

17. "Identify", when used with reference to a document or communication, means state:
   a) its nature (e.g., letter, telegram, memorandum, chart, report, study), name of author, date and place of preparation and the name and address of each addressee, if there is an address;
   b) the identity of each signer to the document or communication;
   c) the title or heading of the document or communication;
   d) its substance;
   e) its present (or, if present is unknown, the last known) location and custodian;
   f) the identity of each person to whom a copy was sent and each date of its receipt and each date of its transmittal or other disposition by (1) you, and (2) any other person (naming such other person) who, at the time, either received, transmitted or otherwise

disposed of such document or communication and each copy thereof; and

g) the circumstances of each such receipt and each transmittal or other disposition, including identification of the person from whom received and the person to whom transmitted.

18. "Identify" when used with reference to an oral statement, conversation or conference, shall mean to (1) identify the person making each statement, the person to whom the statement was made, and all other persons present at the time; (2) state the date of such statement, conversation or conference; (3) state the place where such statement, conversation or conference was held; or (4) if by telephone, identify the persons participating in the telephone call, the person making the call and state the places where the persons participating in the call were located; and/or (5) describe in detail the substance of each statement, conversation or conference.

19. You may, in lieu of identifying any document, attach a true copy of such document or communication as an exhibit to the interrogatory along with an explicit reference to the interrogatory to which each such attached document or communication relates.

20. "Plaintiff" means the Plaintiff, and any employee, agent or attorney for Plaintiff, and any other person acting for, or on behalf of the Plaintiff, or under Plaintiff's authority and control.

21. "Defendant" means the Defendant, and any employee, agent or attorney for Defendant, or under Defendant's authority or control.

22. These interrogatories shall be deemed continuing and should the defendant or his counsel have or come into the possession of any information relevant to these interrogatories, such information is requested to be set forth in supplemental answers. Such supplemental answers are to be served within 30 days after the receipt of additional information, but no later than 20 days before trial.

# INTERROGATORIES

1. What is the name and address of the person answering these interrogatories, and, if applicable, the person's official position or relationship with the party to whom the interrogatories are directed?

2. List all former names and when you were known by those names. State all addresses where you have lived for the past 10 years, the dates you lived at each address, your Social Security number, and your date of birth.

3. Have you ever been convicted of a crime, other than any juvenile adjudication, which under the law which you were convicted was punishable by death or imprisonment in excess of 1 year, or that involved dishonesty or a false statement regardless of the punishment? If so, state as to each conviction, the specific crime and the date and place of conviction.

4. Describe any and all policies of insurance which you contend cover or may cover you for the allegations set forth in plaintiff's complaint, detailing as to such policies the name of the insurer, the number of the policy, the effective dates of the policy, the available limits of liability, and the name and address of the custodian of the policy.

5. Describe in detail how the incident described in the complaint happened, including all actions taken by you to prevent the incident.

6. Describe in detail each act or omission on the part of any party to this lawsuit that you contend constituted negligence that was a contributing legal cause of the incident in question.

7. State the facts upon which you rely for each affirmative defense in your answer.

8. Do you contend any person or entity other than you is, or may be, liable in whole or part for the claims asserted against you in this lawsuit? If so, state the full name and address of each such person or entity, the legal basis for your contention, the facts or evidence upon which your contention is based, and whether or not you have notified each such person or entity of your contention.

9. Were you charged with any violation of law (including any regulations or ordinances) arising out of the incident described in the complaint? If so, what was the nature of the charge; what plea or answer, if any, did you enter to the charge; what court or agency heard the charge; was any written report prepared by anyone regarding the charge, and, if so, what is the name and address of the person or entity who prepared the report; do you have a copy of the report; and was the testimony at any trial, hearing, or other proceeding on the charge recorded in any manner, and, if so, what is the name and address of the person who recorded the testimony?

10. List the names and addresses of all persons who are believed or known by you, your agents, or your attorneys to have any knowledge concerning any of the issues in this lawsuit; and specify the subject matter about which the witness has knowledge.

11. Have you heard or do you know about any statement or remark made by or on behalf of any party to this lawsuit, other than yourself, concerning any issue in this lawsuit? If so, state the name and address of each person who made the statement or statements, the name and address of each person who heard it, and the date, time, place, and substance of each statement.

12. State the name and address of every person known to you, your agents, or your attorneys who has knowledge about, or possession, custody, or control of, any model, plat, map, drawing, motion picture, videotape, or photograph pertaining to any fact or issue involved in this controversy; and describe as to each, what item such person has, the name and address of the person who took or prepared it, and the date it was taken or prepared.

13. Do you intend to call any expert witnesses at the trial of this case? If so, state as to each such witness the name and business address of the witness, the witness's qualifications as an expert, the subject matter upon which the witness is expected to testify, the substance of the facts and opinions to which the witness is expected t testify, and a summary of the grounds for each opinion.

14. Have you made an agreement with anyone that would limit that party's liability to anyone for any of the damages sued upon in this case? If so, state the terms of the agreement and the parties to it.

15. Please state if you have ever been a party, either plaintiff or defendant, in a lawsuit other than the present matter, and, if so, state whether you were plaintiff or defendant, the nature of the action, and the date and court in which such suit was filed.

16. Please identify any and all individuals you are aware of that had any knowledge whatsoever regarding the circumstances of the incident in this case.

17. Please identify the nature of your legal right to access the land in and around the utility poles at the site of the accident in this case.

18. Please identify the corporate representative with the most knowledge regarding the incident in this case with Mr. Williams.

19. Please identify the company providing security the night of the subject incident.

20. Please list any past violent incidents at 912 FRANKLIN STREET, LLC.

21. Please list any violent incidents involving security staff at 912 FRANKLIN STREET, LLC.

22. Provide the name of all individuals working security on the subject night.

23. Provide the name of any and all individuals who were at the exit door at or near the time of the subject incident. This includes employees or security personnel.

STATE OF ____________________ )

COUNTY OF ____________________)

______________________________________
PRINT NAME

The foregoing instrument was acknowledged before me this ______ day of __________________, 2026, by ________________________, who is personally known to me or who has produced ________________________ as identification, and who, after first being duly sworn, deposes and says that they have read the foregoing Answers to Interrogatories which were propounded to them by the Plaintiff, and to the best of their knowledge and belief are true and correct.

______________________________________
Notary Public
Commission No./Expiration:

Filing # 242909980 E-Filed 03/03/2026 09:34:47 AM

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**

AARON WILLIAMS,

Plaintiff,

v.

Case No.:
Division:

ANTONIO'S CIGAR, CO. d/b/a
LIT CIGAR AND MARTINEE LOUNGE, and
912 FRANKLIN STREET, LLC,

Defendants.
_______________________________/

**PLAINTIFF, AARON WILLIAMS' FIRST REQUEST FOR PRODUCTION TO DEFENDANT, 912 FRANKLIN STREET, LLC**

COMES NOW, the Plaintiff, AARON WILLIAMS, by and through the undersigned counsel, pursuant to Rule 1.350 of the Florida Rules of Civil Procedure, and hereby request the Defendant, 912 FRANKLIN STREET, LLC, to produce for inspection and/or copying by counsel for the Plaintiff the following documents, said documents to be produced at the offices of Plaintiff's attorney located at Palmer Lopez, P.A., 17543 Darby Lane, Lutz, FL 33558, and said documents to be produced within forty-five (45) days of service.

**REQUEST TO PRODUCE**

1. Any and all statements (as defined in the Rules of Civil Procedure) concerning this action or the subject matter of this action previously made by the Plaintiffs.

2. Any and all insurance policies which do or may provide benefit or coverage to the Defendant, 912 FRANKLIN STREET, LLC, as a result of the subject incident. Said policies to include any excess and/or umbrella policies.

3. Any and all statements concerning this action, or the subject matter of this action made by any third party.

4. Any and all investigative reports, accident and/or injury reports prepared by any third party regarding the subject incident.

5. Any and all investigative reports, accident and/or injury reports prepared by Defendant regarding the subject incident.

6. All documents, papers, or evidence to be introduced at trial.

7. All expert reports from any experts who will testify at trial.

8. Any and all videotape surveillance taken of the Plaintiff at any time.

9. Any and all investigative reports, accident and/or injury reports prepared by Defendants or any third party for any accidents involving Defendant, 912 FRANKLIN STREET, LLC, from five (5) years before the subject incident to the present.

10. Any and all contracts between Defendant, 912 FRANKLIN STREET, LLC, and the company providing security during the subject incident.

11. Any and all employee and/or personnel file(s) of the persons staffing the establishment's security on the subject night in question.

12. All training materials, documents, guidelines or anything of the like ever provided to security personnel that were working on the subject night.

13. Any and all operative contracts and/or lease agreements with Co-Defendant.

14. The employment applications and resume's for all security personnel working on the subject night.

15. Any and all use of force plans, policies, or procedures that were in place at the time of the subject incident.

16. Produce any and all guidelines, policies, procedures that would have dictated how security was to carry out their job duties in effect at the time of the subject incident.

17. Produce the employee schedule for the 6 hours before and 6 hours after the subject incident.

18. Produce all prior incident reports that have been filed involving any of the security personnel that were working at the time of the subject incident.

19. Produce any and all inventories of the physical items that were on security personnel at the time of the subject incident. This includes but is not limited to metal detectors/wands, weapons, handcuffs or anything of the like.

**CERTIFICATE OF SERVICE**

THE UNDERSIGNED HEREBY CERTIFIES that a true and correct copy of the above and foregoing has been electronically filed with the Court through the Florida E-File Portal and furnished to Defendants with a copy of the Complaint.

**PALMER LOPEZ, P.A.**

/s/ Joseph K. Lopez, Jr.

Joseph K. Lopez Jr.
Florida Bar No.: 106080
Martin W. Palmer
Florida Bar No.: 0150347
Dennis E. Lopez
Florida Bar No.: 1048768
17543 Darby Lane

Lutz, Florida 33558
Phone: 813-506-5651
Facsimile: 813-506-5654
E-mail: service@palmerlopez.com
jklopez@palmerlopez.com
***Counsel for Plaintiff***

# EXHIBIT "B"

# Commercial General Liability

TRISURA

This policy may be subject to surplus lines taxes, stamping fees, surcharges, and certain surplus lines reporting requirements mandated by state regulation. The Surplus Lines Broker is responsible for the disclosure of all related taxes, surcharges, and fees. The Surplus Lines Broker is also responsible for the applicable surplus lines reporting requirements including but not limited to the submission of diligent search forms.

**Item 4. PREMIUM**

| | |
|---|---|
| **General Liability** | [redacted] |
| **Liquor Liability** | [redacted] |
| **Optional Coverages** | [redacted] |
| **Terrorism** | [redacted] |
| **Loss Control Fee** | [redacted] |

**This policy is issued by a surplus lines insurer. In the event of insolvency of the insurer, this insurance is not Covered by the Guaranty Fund or Guarantee Association.**

In consideration of the payment of premium and in reliance upon statements made in the application, this policy including all endorsements issued herewith shall constitute the contract between Company and the Named Insured. This policy is valid only if signed below by a duly authorized representative of the company.

This policy, including all endorsements issued herewith, is hereby countersigned by:

2/7/2025

**Date** **Authorized Representative**

**Michael Beasley**
**President and CEO**

**Micah Gautreaux**
**General Counsel and Secretary**

# Commercial General Liability

TRISURA

## Trisura Specialty Insurance Company

**(An Oklahoma Stock Company** hereinafter the "Insurer")

| Policy Number: | Agent Name and Address: | New or Renewal: |
|---|---|---|
| OSU1006276-02 | Origin Specialty Underwriters Agency, LLC<br>1701 Golf Road, Suite 3-1007<br>Rolling Meadows, IL 60008 | Renewal |

**Item 1. Named Insured: Antonio's Cigar, Co. DBA Lit Cigar & Martini Lounge**

**Address:** **908 N. Franklin Street**
**Tampa, FL 33602**

**The Named Insured is:** **Corporation**

**Business of the Insured is** **Restaurants >75% Liquor**

---

**Item 2. Policy Period 2/4/2025 To 2/4/2026**

12:01 A.M., standard time at the address of the Named Insured as stated herein

---

**Item 3. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.**

**LIMITS OF INSURANCE**

| | |
|---|---|
| Each Occurrence | $1,000,000 |
| General Aggregate Limit (Other Than Products-Completed Operations) | $2,000,000 |
| Products-Completed Operations Aggregate Limit | $2,000,000 |
| Personal Injury And Advertising Injury | $1,000,000 |
| Damages To Premises Rented To You Limit (Any One Premises) | $100,000 |
| Medical Payments | Excluded |
| Liquor Liability Each Common Cause | $1,000,000 |
| Liquor Liability Aggregate | $2,000,000 |
| Assault & Battery Limit | $1,000,000 |

TRISURA

# Commercial General Liability

**For Attachment To Policy No: OSU1006276-02**

The Additional Declarations and Schedule Below Are an Extension of Those Issued in Connection with Commercial General Liability Insurance Coverage Part

**LOCATION AND EXPOSURE SCHEDULE**

| Loc No. | Street | City | State | Zip | Description of Hazard | Code No. | Premium Basis | Premises/ Ops Rate | Products/ Ops Rate | Exposure |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 908 N Franklin St | Tampa | FL | 33602 | Restaurants - with tables w/o dance floor table service | 16930 | sales | [redacted] | [redacted] | [redacted] |
| 1 | 908 N Franklin St | Tampa | FL | 33602 | Tobacco Products Stores | 18708 | sales | [redacted] | [redacted] | [redacted] |

TRISURA

# Commercial Liquor Liability

FOR ATTACHMENT TO POLICY NO: OSU1006276-02

The Additional Declaration and Schedule Below are an Extension of Those Issued in Connection with Commercial Liquor Liability Insurance Coverage Part

**LOCATION AND EXPOSURE SCHEDULE**

| Loc No. | Street | City | State | Zip | Description of Hazard | Code No. | Premium Basis | Rate | Exposure |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 908 N Franklin St | Tampa, FL 33602 | Tampa | FL | Liquor Liability - Restaurants >75% Liquor with Entertainment | 68166 | sales | [redacted] | [redacted] |

TRISURA

## SCHEDULE OF FORMS & ENDORSEMENTS

**POLICY NUMBER: OSU1006276-02**

Forms and endorsements made a part of this policy:

| NUMBER: | DESCRIPTION: |
|---|---|
| GL1001 (1218) | DECLARATIONS PAGE |
| LOC-SCHED 12-18 | GL LOCATION AND HAZARD SCHEDULE |
| LL-LOC-SCHED 12-18 | LL LOCATION AND HAZARD SCHEDULE |
| IL 00 17 11 98 | COMMON POLICY CONDITIONS |
| CG 00 01 04 13 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG 00 33 04 13 | LIQUOR LIABILITY COVERAGE FORM |
| CG2173 (0108) | EXCLUSION OF CERTIFIED ACTS OF TERRORISM |
| OSU-TSI 1022 (1218) | DRINKING GAME OR CONTEST EXCLUSION |
| CG2147 (1207) | EMPLOYMENT RELATED PRACTICES EXCLUSION |
| CG 21 35 10 01 | EXCLUSION - COVERAGE C - MEDICAL PAYMENTS |
| OSU-TSI 1006 (1218) | EXCLUSION - CROSS SUITS LIABILITY |
| OSU-TSI 1017 (1218) | EXCLUSION - DISCRIMINATION |
| OSU-TSI 1033 (1218) | EXCLUSION - PERFORMERS, PERFORMANCE PARTICIPANTS AND CONTRACTED SECURITY |
| OSU-TSI 1005 (1218) | EXCLUSION COLOR OF LAW |
| OSU-TSI 1011 (1218) | EXCLUSION PUNITIVE DAMAGES |
| IL0021 (0908) | EXCLUSION-NUCLEAR ENERGY - BROAD FORM |
| OSU-TSI 1007 (1218) | EXPANDED DEFINITION OF BODILY INJURY |
| OSU-TSI 1008 (1218) | EXPANDED DEFINITION OF EMPLOYEE ENDORSEMENT |
| CG0220 (1207) | FL CHANGES - CANCELLATION AND NON-RENEWAL |
| ILN001 (0903) | FL FRAUD STATEMENT |
| CG2167 (1204) | FUNGI OR BACTERIA EXCLUSION |
| OSU-TSI 1021 (1218) | GENERAL LIABILITY REPRESENTATION AND WARRANTY ENDORSEMENT |
| OSU-TSI 1010 (1218) | MINIMUM EARNED PREMIUM ENDORSEMENT |
| IL 00 21 09 08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT |
| CG2407 (0196) | PRODUCTS COMPLETED OPERATIONS HAZARD REDEFINED |

TRISURA

| | |
|---|---|
| CG0068 (0509) | RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION |
| CG2198 (1207) | TOTAL POLLUTION EXCLUSION ENDORSEMENT |
| ILP 001 (0104) | US TREASURY DEPT OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICY HOLDERS |
| CG2136 (0305) | EXCLUSION - NEW ENTITIES |
| OSU-TSI 1012 (1218) | WARRANTY ENDORSEMENT – EXCLUSION OF COVERAGE FOR BREACH OF ENUMERATED WARRANTIES – ONE OR FEWER PRIOR CLAIMS OR INCIDENTS |
| OSU-TSI 10 38 (1218) | AMENDMENT – DUTIES IN THE EVENT OF AN OCCURRENCE, CLAIM OR SUIT |
| OSU-TSI-1458 (0422) | EXCLUSION – ABUSE OR MOLESTATION |
| OSU-TSI 1456 (0621) | EXCLUSION - FIREARMS OR WEAPONS |
| OSU-TSI 1020 (1218) | SERVICE OF SUIT CLAUSE |
| OSU-CGL 489 (02-23) | AMEND MINIMUM AND DEPOSIT PREMIUM ENDORSEMENT |
| OSU-TSI-14 57 (0322) | ANIMAL LIABILITY EXCLUSION WITH SERVICE ANIMAL EXCEPTION |
| OSU-TSI 0004 (1218) | ATHLETIC OR SPORT PARTICIPANTS EXCLUSION |
| OSU-TSI 1050 (1220) | AUDITABLE POLICY WITH MINIMUM PREMIUM |
| OSU-FFX 00 05 (0519) | CYBER LIABILITY EXCLUSION |
| OSU-TSI 1046 (0520) | EXCLUSION - COMMUNICABLE DISEASE |
| OSU-TSI 1057 (02/24) | EXCLUSION - DELIVERY SERVICE WORKER |
| CG 21 06 05 14 | EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION |
| OSU 100-0722 | EXCLUSION – ASBESTOS, LEAD OR SILICA |
| OSU-TSI 1048 (0224) | EXCLUSION – INJURY TO TEMPORARY WORKER, VOLUNTEER WORKER, CASUAL WORKER, OR INDEPENDENT CONTRACTOR |
| OSU-TSI 1049 (0720) | EXCLUSION – LEAD |
| CG2144 (0417) | LIMITATION TO COVERAGE TO DESIGNATED PREMESIS OR PROJECT |
| OSU-TSI 1013 (02/23) | LIMITED ASSAULT AND BATTERY COVERAGE |
| OSU-TSI 1042 (1218) | TOBACCO HEALTH HAZARD EXCLUSION |
| CG 40 14 12 20 | CANNABIS EXCLUSION |
| OSU-TSI 1055AOS | WARRANTY ENDORSEMENT - EXCLUSION OF COVERAGE FOR FAILURE TO REQUIRE TIPS OR |

TRISURA

| | |
|---|---|
| | ANOTHER CERTIFICATION OF EMPLOYEES |
| CG 40 12 12 19 | EXCLUSION – ALL HAZARDS IN CONNECTION WITH AN ELECTRONIC SMOKING DEVICE, ITS VAPOR, COMPONENT PARTS, EQUIPMENT AND ACCESSORIES |
| CG 40 32 05 23 | EXCLUSION – PERFLUOROALKYL AND POLYFLUOROALKYL SUBSTANCES (PFAS) |
| OSU-TSI 1026 (12/24) | EXCLUSION – DESIGNATED EXPOSURES |
| PRIVACY POLICY | PRIVACY POLICY |

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.
3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:
   a. Make inspections and surveys at any time;
   b. Give you reports on the conditions we find; and
   c. Recommend changes.
2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
   a. Are safe or healthful; or
   b. Comply with laws, regulations, codes or standards.
3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.
4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

 © Insurance Services Office, Inc., 2012 

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

 © Insurance Services Office, Inc., 2012 

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

 © Insurance Services Office, Inc., 2012 

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

 © Insurance Services Office, Inc., 2012 

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

 © Insurance Services Office, Inc., 2012 

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

 © Insurance Services Office, Inc., 2012 

**COVERAGE C – MEDICAL PAYMENTS**

1. **Insuring Agreement**

   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

      **(1)** On premises you own or rent;

      **(2)** On ways next to premises you own or rent; or

      **(3)** Because of your operations;

      provided that:

      **(a)** The accident takes place in the "coverage territory" and during the policy period;

      **(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

      **(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

      **(1)** First aid administered at the time of an accident;

      **(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

      **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

   We will not pay expenses for "bodily injury":

   a. **Any Insured**

      To any insured, except "volunteer workers".

   b. **Hired Person**

      To a person hired to do work for or on behalf of any insured or a tenant of any insured.

   c. **Injury On Normally Occupied Premises**

      To a person injured on that part of premises you own or rent that the person normally occupies.

   d. **Workers' Compensation And Similar Laws**

      To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

   e. **Athletics Activities**

      To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

   f. **Products-Completed Operations Hazard**

      Included within the "products-completed operations hazard".

   g. **Coverage A Exclusions**

      Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

 © Insurance Services Office, Inc., 2012 

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

 © Insurance Services Office, Inc., 2012 

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A;** and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

 © Insurance Services Office, Inc., 2012 

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

 © Insurance Services Office, Inc., 2012 

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

 © Insurance Services Office, Inc., 2012 

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

 © Insurance Services Office, Inc., 2012 

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.


© Insurance Services Office, Inc., 2012

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.


© Insurance Services Office, Inc., 2012

# LIQUOR LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – LIQUOR LIABILITY COVERAGE

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to "injury" only if:

**(1)** The "injury" occurs during the policy period in the "coverage territory"; and

**(2)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "injury" or claim, knew that the "injury" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "injury" occurred, then any continuation, change or resumption of such "injury" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Injury" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim, includes any continuation, change or resumption of that "injury" after the end of the policy period.

**d.** "Injury" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim:

**(1)** Reports all, or any part, of the "injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "injury"; or

**(3)** Becomes aware by any other means that "injury" has occurred or has begun to occur.

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Injury" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

 © Insurance Services Office, Inc., 2012 

**c. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the "injury".

**d. Liquor License Not In Effect**

"Injury" arising out of any alcoholic beverage sold, served or furnished while any required license is not in effect.

**e. Your Product**

"Injury" arising out of "your product". This exclusion does not apply to "injury" for which the insured or the insured's indemnitees may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

**f. Other Insurance**

Any "injury" with respect to which other insurance is afforded, or would be afforded but for the exhaustion of the limits of insurance.

This exclusion does not apply if the other insurance responds to liability for "injury" imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.

**g. War**

"Injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**SUPPLEMENTARY PAYMENTS**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**1.** All expenses we incur.

**2.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**3.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**4.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**5.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**6.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

**7.** Expenses incurred by the insured for first aid administered to others at the time of an event to which this insurance applies.

These payments will not reduce the limits of insurance.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.


© Insurance Services Office, Inc., 2012

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

**(1)** "Injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(a)** above; or

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(a)** or **(b)** above.

**(2)** "Property damage" to property:

**(a)** Owned or occupied by; or

**(b)** Rented or loaned;

to that "employee", any of your other "employees", by any of your partners or members (if you are a partnership or joint venture), or by any of your members (if you are a limited liability company).

**b.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**b.** Coverage does not apply to "injury" that occurred before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The Aggregate Limit is the most we will pay for all "injury" as the result of the selling, serving or furnishing of alcoholic beverages.

**3.** Subject to the Aggregate Limit, the Each Common Cause Limit is the most we will pay for all "injury" sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – LIQUOR LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

 © Insurance Services Office, Inc., 2012 

**2. Duties In The Event Of Injury, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "injury" which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "injury" took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any "injury".

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury" to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary. Our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **b.** below.

**b. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.


© Insurance Services Office, Inc., 2012

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**2.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the "injury" occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the "injury" arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above; or

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**3.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**4.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**5.** "Injury" means damages because of "bodily injury" and "property damage", including damages for care, loss of services or loss of support.

**6.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**7.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

**8.** "Suit" means a civil proceeding in which damages because of "injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**9.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

 © Insurance Services Office, Inc., 2012 

**10.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

 © Insurance Services Office, Inc., 2012 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

 © ISO Properties, Inc., 2007 

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| OSU1006276-02 | 2/4/2025 | Antonio's Cigar, Co. | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DRINKING GAME OR CONTEST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE
PART LIQUOR LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** Paragraph **2. Exclusions** of **SECTION I – COVERAGES, COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, Paragraph **2.**

**Exclusions** of **SECTION I – COVERAGES, COVERAGE C- MEDICAL PAYMENTS** and Paragraph **2. Exclusions** of **SECTION I –LIQUOR LIABILITY COVERAGE**:

**Drinking Game or Contest**

This insurance does not apply to any liability or "injury" arising out of a game or contest involving the consumption of alcoholic beverages.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

 Copyright, ISO Properties, Inc., 2006 

POLICY NUMBER: OSU1006276-02

**COMMERCIAL GENERAL LIABILITY**
**CG 21 35 10 01**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Description And Location Of Premises Or Classification:** Per Policy Declarations |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

**1.** Section **I** – Coverage **C** – Medical Payments does not apply and none of the references to it in the Coverage Part apply: and

**2.** The following is added to Section **I** – Supplementary Payments:

**h.** Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.


© ISO Properties, Inc., 2000

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| OSU1006276-02 | 2/4/2025 | Antonio's Cigar, Co. | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – CROSS SUITS

This endorsement modifies insurance provided by the Coverage Part(s) below:

All Coverage Parts

COVERAGE PART A - COMMERCIAL GENERAL LIABILITY
COVERAGE PART F - PRODUCTS/COMPLETED OPERATIONS LIABILITY
LIQUOR LIABILITY COVERAGE

Solely with respect to coverage afforded by the Coverage Part(s) checked above:

This insurance does not apply to “bodily injury”, “property damage” or “personal and advertising injury” or any other claim for damages brought by any insured covered by this Policy, against any other insured that has an ownership interest in, is operated, controlled, or managed by or is a parent, subsidiary or affiliate of any such insured.

This exclusion does not apply to any additional insured added to this policy by endorsement if such additional insured is:

**1.** specifically named in the Schedule of such endorsement; or

**2.** an indemnitee in a written contract or written agreement between any Named Insured and any additional insured signed before the date of the first “occurrence” or first offense and requiring the Named Insured to add such indemnitee as an additional insured;

Provided such additional insured:

**a.** is not a parent, subsidiary or affiliate of the Named Insured;

**b.** does not have any ownership interest in the Named Insured;

**c.** is not owned, operated, controlled or managed by the Named Insured.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| OSU1006276-02 | 2/4/2025 | Antonio's Cigar, Co. | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DISCRIMINATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**COVERAGE A -BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, of the Commercial General Liability Coverage Form is amended by adding the following additional exclusion:

"Bodily injury" resulting from or as a consequence of discrimination, whether intentional or unintentional, based upon a person's sex, sexual preference, marital status, race, creed, religion, national origin, age, physical capabilities, characteristics or condition, or mental capabilities or condition.

**COVERAGE B -PERSONAL AND ADVERTISING INJURY LIABILITY**, of the Commercial General Liability Coverage Form is amended by adding the following additional exclusion:

"Personal and advertising injury" resulting from or as a consequence of discrimination, whether intentional or unintentional, based upon a person's sex, sexual preference, marital status, race, creed, religion, national origin, age, physical capabilities, characteristics or condition, or mental capabilities or condition.

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| OSU1006276-02 | 2/4/2025 | Antonio's Cigar, Co. | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – PERFORMERS, PERFORMANCE PARTICIPANTS, AND CONTRACTED SECURITY

The following is added to the Exclusions section:

This insurance does not apply to, nor shall we have the duty to defend, any claim or "suit" arising out of or resulting from any loss, injury or damage to:

1. Any performers, or audience members invited by a performer to participate in any performance or event, or the property of such performer or audience member. This exclusion applies during any performance or in practice or instructing for any performance; or
2. Any independent contractors that perform any security operations for an insured including but not limited to door-persons; identification checking; crowd control; subduing or evicting patrons; or other functions to protect persons or property.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| OSU1006276-02 | 2/4/2025 | Antonio's Cigar, Co. | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – COLOR OF LAW

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM LIQUOR
LIABILITY COVERAGE FORM

This insurance does not apply to any loss, claim, “suit”, cost, expense or liability for damages, directly or indirectly in any way based upon, attributable, arising out of, involving, resulting from or related to any person who engages in any of the following type of activities:

1. Police-like action or action under the color of law;
2. Acting or purporting to act as if performing official duties under any law, ordinance or regulation;
3. Using or appearing to use power or authority granted to him/her by any governmental agency, whether local, state or federal;
4. Carrying out or purporting to carry out official governmental duties;
5. Acting or appearing to act as if cloaked in the authority of law, whether explicit or implied;
6. Acting with apparent governmental authority;
7. Creating the appearance of performing based upon the enforcement of law or statute; or
8. Acting with the apparent authority of law or the semblance or appearance of the right to enforce the law.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| OSU1006276-02 | 2/4/2025 | Antonio's Cigar, Co. | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - PUNITIVE DAMAGES

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**LIQUOR LIABILITY COVERAGE FORM**

The policy is amended as follows:

I. The following exclusion is added to the policy:

This insurance does not apply to or provide coverage for "punitive damages".

If a "suit" is brought against any insured, which includes allegations of "injury" that fall within the coverage provided by the policy, and such "suit" :seeks both compensatory damages and "punitive damages", no coverage will be provided by this policy for any costs, interest, defense costs, attorney or legal fees of any type, or damages attributable to "punitive damages".

II. The following definition is added to the policy:

"Punitive damages", which may also be called exemplary damages, means damages awarded by a court above and beyond the requirements for compensating a plaintiff for "injury" and intended to punish, reform or deter the defendant and to deter similar persons from pursuing a course of action such as that which damaged the plaintiff. "Punitive damages" does not include civil or criminal fines or penalties imposed by any government authority.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

 © ISO Properties, Inc., 2007 

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2007 

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| OSU1006276-02 | 2/4/2025 | Antonio's Cigar, Co. | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXPANDED DEFINITION OF BODILY INJURY

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**LIQUOR LIABILITY COVERAGE FORM**

The Definition of “bodily injury” is removed in its entirety and replaced with the following:

1. "Bodily injury" means:
   a. bodily injury,
   b. sickness,
   c. disease; or
2. mental anguish or emotional distress arising out of a., b., or c.,

   above, sustained by a person, including death resulting from any

   of these at anytime.

This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| OSU1006276-02 | 2/4/2025 | Antonio's Cigar, Co. | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXPANDED DEFINITION OF EMPLOYEE ENDORSEMENT

**This endorsement modifies insurance provided under the following:**

**LIQUOR LIABILITY COVERAGE FORM**

The policy is amended as follows:

I. Definition **3**. of **SECTION V – DEFINITIONS** is deleted and replaced with the following:

**3**. “Employee” includes a “leased worker”, “temporary worker” or “volunteer worker”.

II. The following definition is added to the policy:

“Volunteer worker” means a person 21 years of age or older who is not your “employee” and who donates work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

Authorized Representative

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Of Policies In Effect**

**a. For 90 Days Or Less**

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

**(a)** A material misstatement or misrepresentation; or

**(b)** A failure to comply with the underwriting requirements established by the insurer.

**b. For More Than 90 Days**

If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** The policy was obtained by a material misstatement;

**(3)** Failure to comply with underwriting requirements established by the insurer within 90 days of the effective date of coverage;

**(4)** A substantial change in the risk covered by the policy; or

**(5)** The cancellation is for all insureds under such policies for a given class of insureds.

If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(b)** 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in Paragraph **2.b.**

**B.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

 © ISO Properties, Inc., 2007 

If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

**C.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

**1.** If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.


© ISO Properties, Inc., 2007

# FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

 © ISO Properties, Inc., 2003 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

 © ISO Properties, Inc., 2003 

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| OSU1006276-02 | 2/4/2025 | Antonio's Cigar, Co. | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL LIABILITY REPRESENTATION AND WARRANTY ENDORSEMENT

**This endorsement modifies insurance provided under the following:**

**GENERAL LIABILITY COVERAGE FORM**

The policy is amended as follows:

The following is added to **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

The Named Insured acknowledges that this policy would not have been issued without the following representations and warranties. The Named Insured agrees to maintain the following warranties for the entire term of the policy and any renewals thereof, as a condition of coverage under this policy.

In consideration of the payment of premium and the issuing of coverage, the Named Insured represents and warrants as follows:

## Representations and Warranties

1. Neither the Named Insured nor any majority owner, partner or member has filed for bankruptcy in the past five years preceding the date of application for this policy.
2. The Named Insured has not experienced three or more losses or claims in the five years preceding the date of application, unless the reasons have been disclosed to us and approved by us.
3. The Named Insured has not had any insurance coverage cancelled or non-renewed for any reason in the three years preceding the date of application for this policy, unless the reasons have been disclosed to us and approved by us.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| OSU1006276-02 | 2/4/2025 | Antonio's Cigar, Co. | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES THE POLICY.**

# MINIMUM EARNED PREMIUM AMENDMENT ENDORSEMENT

If this insurance policy is cancelled at your request, there will be a Minimum Earned Premium retained by us of $_______or 25 % (percent) of the premium, whichever is the greater. Cancellation for non-payment of premium is considered a request by the first Named Insured for cancellation of this policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

 © ISO Properties, Inc., 2007 

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.


© ISO Properties, Inc., 2007

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of Premises and Operations:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to "bodily injury" or "property damage" arising out of "your products" manufactured, sold, handled or distributed:

**1.** On, from or in connection with the use of any premises described in the Schedule, or

**2.** In connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf,

Paragraph **a.** of the definition of "Products-completed operations hazard" in the DEFINITIONS Section is replaced by the following:

"Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

 Copyright, Insurance Services Office, Inc., 1994 

# RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **q.** of Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.** Exclusion **p.** of Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

 © Insurance Services Office, Inc., 2008 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverages – Bodily Injury And Property Damage Liability**

**2. Exclusions**

This insurance does not apply to:

**Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

The following definition is added to the Definitions Section:

"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

 © ISO Properties, Inc., 2006 

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 © ISO Properties, Inc., 2004 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – NEW ENTITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **3.** of **Section II – Who Is An Insured** does not apply.

 © ISO Properties, Inc., 2004 

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| OSU1006276-02 | 2/4/2025 | Antonio's Cigar, Co. | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WARRANTY ENDORSEMENT – EXCLUSION OF COVERAGE FOR BREACH OF ENUMERATED WARRANTIES – ONE OR FEWER PRIOR CLAIMS OR INCIDENTS

**This endorsement modifies insurance provided under the following:**

**LIQUOR LIABILITY COVERAGE FORM**

The following exclusion is added to the policy:

This insurance does not apply to “injury”, loss, cost, expense, liability or legal obligation arising out of, related to, or attributable to arising or resulting from a claim or “suit” against any insured for "injury" based on the selling, serving or furnishing of any alcoholic beverage, if at any time, you have breached one or more of the warranties set forth below in this Warranty Endorsement attached to and made a part of this policy.

I. The insured warrants as follows:

1. The insured has had no more than one liquor liability claim or incident likely to give rise to a liquor liability claim for any location scheduled below within five years prior to the date the application for this insurance is signed (excluding a liquor liability claim closed without payment because insured found not legally liable).

2. The insured has had no more than two fines or citations for violation of law or ordinance related to the sale or service of alcohol at a scheduled location within five years prior to the date the application for this insurance is signed, unless the reasons have been disclosed to us and approved by us.

3. Neither the insured nor any principal with a controlling interest in the insured has filed for bankruptcy (either liquidation or reorganization) within 12 months prior to the date the application for this insurance is signed.

II. As a condition of coverage, the insured warrants and agrees that the following will be maintained during the term of this policy and any renewals thereof:

1. A Commercial General Liability Insurance Policy with limits of insurance equal to or greater than the Liquor Liability limits of this policy.

2. A valid, active liquor license, if required by ordinance or law, prior to the insured selling, serving or distributing alcohol.

3. Enforced written policies and procedures that prohibit the consumption of alcohol by any person during employment or service at the scheduled location. This includes “employees”, “temporary workers”, “leased workers”, entertainers or performers of any kind, club members (if providing a service), or any other person providing any service at the scheduled location.

4. Enforced written policies and procedures providing that only the insured and its authorized employees or members are permitted to serve alcohol. In the alternative, the insured warrants that persons serving alcohol who are not the insured’s authorized employees or members are insured under a separate policy of liquor liability insurance with limits equal to or greater than the limits of this policy.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| OSU1006276-02 | 2/4/2025 | Antonio's Cigar, Co. | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT – DUTIES IN THE EVENT OF AN OCCURRENCE, CLAIM OR SUIT

In addition to your obligations under Section IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, paragraph 2 and your obligations under Section IV – LIQUOR LIABILITY CONDITIONS, paragraph 2, Duties In The Event of Occurrence, Offense, Claim or suit, the following is added:

e. Written notice of an “occurrence” or an offense which may result in a claim must be sent to:

**Origin Specialty Agency Underwriters, LLC**
1701 Golf Road 3-1007
Rolling Meadows, IL 6008

We have a dedicated phone number: 800-813-6252
We have a dedicated email address to report new losses: claims@origin-specialty.com
We have a dedicated fax: 847-929-9556

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| OSU1006276-02 | 2/4/2025 | Antonio's Cigar, Co. | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ABUSE OR MOLESTATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM (OCCURRENCE VERSION)

**SECTION I – COVERAGES**, **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, **2. Exclusions** are amended by the addition of the following:

**Abuse or Molestation**

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of or in any way related, in whole or in part, to any actual, threatened or alleged:

**(a)** Sexual abuse;

**(b)** Sexual molestation;

**(c)** Sexual misconduct;

**(d)** Sexual victimization;

**(e)** Coercion to engage in sexual activities;

**(f)** Illicit physical contact;

**(g)** Sexual assault;

**(h)** Sexual battery;

**(i)** Sexual exploitation; or

**(j)** Negligent reporting to the property authorities, or failure to so report.

**(2)** This exclusion applies regardless of the degree of culpability or intent and without regard to:

**(a)** Whether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, "employees", agents or servants; or by any other person lawfully or otherwise on, at or near the premises owned or occupied by the insured; or by any other person;

**(b)** The alleged failure of the insured or his officers, "employees", agents or servants in the hiring, supervision, retention or control of any person, whether or not an officer, "employee", agent or servant of the insured; or

**(c)** The alleged failure of the insured or his officers, "employees", agents or servants to attempt to prevent, bar or halt any such conduct.


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(3)** This exclusion also applies to any claims by any other person, firm or organization, asserting rights derived from or contingent upon any person asserting a claim excluded under subparagraphs **(2)(a), (2)(b)** or **(2)(c)** above; specifically excluding from coverage claims for:

**(a)** Emotional distress or for loss of society, services, consortium and/or income;

**(b)** Reimbursement for expenses (including but not limited to medical expenses, hospital expenses and wages) paid or incurred by such other person, firm or organization; or

**(c)** Any obligation to share damages with or repay someone who must pay damages because of the injury.

All other terms and conditions of this policy remain unchanged.


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| OSU1006276-02 | 2/4/2025 | Antonio's Cigar, Co. | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - FIREARMS OR WEAPONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORMLIQUOR
LIABILITY COVERAGE FORM

The following exclusion is added to the COMMERCIAL GENERAL LIABILITY COVERAGE FORM andthe LIQUOR LIABILITY COVERAGE FORM:

A. This insurance does not apply to "bodily injury," "property damage," "personal and advertising injury," or "injury" arising out of, caused by, or resulting from, in whole or in part:

1. The ownership, maintenance, use or misuse by any insured or any other person of any “firearm”;
2. The ownership, maintenance, use or misuse by any insured or any other person of any object or instrument used as a “weapon”, whether or not it was originally intended, created or designed to be used as a “weapon”;
3. Any act, error or omission committed by you or on your behalf in connection with the prevention or suppression of the use of:

a. Any “firearm”;

b. Any object or instrument used as a “weapon”, whether or not it was originally intended, created or designed to be used as a “weapon”;

4. The failure of any insured, or any person or legal entity to provide an environment safe from the use of “firearms” or “weapons” whether or not such instrument, object or projectile was originally intended, created or designed to be used as a “weapon” or “firearm”, including but not limited to the failure to provide adequate security, or the failure to warn ofthe dangers of the environment which could contribute in whole or in part to the “bodily injury,” “property damage,” “personal and advertising injury,” or “injury,” or the failure to maintain the premises by you, any insured, or any person or legal entity;

5. Any failure or delay in the rendering of proper aid or assistance, reporting to proper authorities, investigating any incident, preserving of any evidence, or otherwise failing to respond properly or timely to any “occurrence” involving a “firearm” or “weapon” regardless of whether or not such instrument, object or projectile was originally intended, created or designed to be used as a “weapon” or “firearm.”

B. This exclusion applies to the foregoing and to any claim or “suit” alleging in whole or in part the foregoing:

1. Whether an act or omission is by, for, or on behalf of an insured, or at the direction of an insured, or by or at the direction of any other person or entity.

2. Whether an act or omission is on premises owned or occupied by an insured, or owned or occupied by any other person or entity;

3. Regardless of the intent or degree of culpability of any insured, or of any other person or entity;

4. Regardless of whether the use or misuse of a “firearm” or “weapon” is a direct cause, and/or a contributory cause of such “bodily injury”, “property damage”, “personal and advertising injury,” or “injury”;

5. Regardless of the presence of other allegations in the claim or “suit” which are not excluded by the terms of this endorsement; and

6. Regardless of the legal theory of liability or damages, including but not limited to vicarious liability, violation of any law or statute, criminal act, intentional act or negligence, and including but not limited to causes of action based on hiring, supervision, retention, training, instructing, advising, monitoring, providing security, or implementing procedures and protocols.

C. The following is added to SECTION V – DEFINITIONS

1. “Firearm” means any pistol, rifle, gun or other device capable of expelling or propelling one or more projectiles by the action of an explosive, combustible propellant, or compressed air.

2. “Weapons” means instruments that can be or are utilized in an offensive or defensive nature and include but are not limited to batons, bow or crossbow, arrows, knives, mace, stun guns or

swords.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| OSU1006276-02 | 2/4/2025 | Antonio's Cigar, Co. | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

# SERVICE OF SUIT CLAUSE

It is agreed that, in the event of the failure of the **Insurers** hereon to pay any amount claimed to be due hereunder, we, at the request of the **Insured**, will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of **Insurers'** rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States, District Court, or to seek transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon

Trisura Specialty Insurance Company
General Counsel
210 Park Avenue, Suite 1400
Oklahoma City, OK 73102

and, that in any suit instituted against any one of them upon this contract, **Insurers** will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of **Insurers** in any such suit and / or upon the request of the **Insured** to give a written undertaking to the **Insured** (or that they will enter a general appearance upon **Insurers'** behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, **Insurers** hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action , suit or proceeding instituted by or on behalf of the **Insurers** or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS OF THE POLICY REMAIN UNCHANGED.**

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| OSU1006276-02 | 2/4/2025 10:45:00 AM | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMEND MINIMUM AND DEPOSIT PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART

It is hereby understood and agreed that Paragraph **5.b. Premium Audit** of **Section IV – Commercial General Liability Conditions** and Paragraph **5.b. Section IV – Liquor Liability Conditions** are deleted and replaced by the following;

**b.** Premium shown in this Coverage Part as advance premium is both a deposit premium and a minimum premium for the full policy period. At the close of each audit period we will compute the earned premium for that period. If the earned premium is more than the advance premium, notice of the amount by which it exceeds the advance premium will be sent to the first Named Insured. If the earned premium is less than the advance premium, the advance premium will apply as the minimum premium, with no return premium payable to you.

**All Other Terms, Conditions And Limitations Of This Policy Shall Remain Unchanged.**


Contains Copyrighted Material of Insurance Services Offices, Inc. used with permission

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ANIMAL LIABILITY EXCLUSION WITH SERVICE ANIMAL EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** and **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions** are amended and the following added:

**Liability for Animals**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of any animal except for service animal.

B. **DEFINITIONS -** "Service animal means any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. Other species of animals, whether wild or domestic, trained or untrained, are not service animals for the purposes of this definition. The work or tasks performed by a service animal must be directly related to the individual´s disability. Examples of work or tasks include, but are not limited to, assisting individuals who are blind or have low vision with navigation and other tasks, alerting individuals who are deaf or hard of hearing to the presence of people or sounds, providing non-violent protection or rescue work, pulling a wheelchair, assisting an individual during a seizure, alerting individuals to the presence of allergens, retrieving items such as medicine or the telephone, providing physical support and assistance with balance and stability to individuals with mobility disabilities, and helping persons with psychiatric and neurological disabilities by preventing or interrupting impulsive or destructive behaviors. The crime deterrent effects of an animal´s presence and the provision of emotional support, well-being, comfort, or companionship do not constitute work or tasks for the purposes of this definition."

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

 Includes copyrighted material of Insurance Services Office, Inc., with its permission. 

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| OSU1006276-02 | 2/4/2025 | Antonio's Cigar, Co. | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ATHLETIC OR SPORT PARTICIPANTS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2.

**Exclusions** is amended and the following added:

### Athletic or Sport Participants

This insurance does not apply to “bodily injury” to any person arising directly or indirectly out of practicing for or participating in any athletic contest, exhibition, activity, game or sport.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| OSU1006276-02 | 2/4/2025 | Antonio's Cigar, Co. | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AUDITABLE POLICY WITH MINIMUM PREMIUM

This endorsement modifies insurance under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM

| | |
|---|---|
| Minimum Premium Percentage: | 100.00 % |

Section IV. Conditions, Subsection 5. Premium Audit, is deleted in its entirety and replaced with the following:

Premium Audit

The premium for this Policy shall be subject to audit, as follows:

**1.** We shall compute all premiums for this Policy in accordance with our rules and rates, which are incorporated herein and made a part of this Policy. Premium shown in the Declarations as Advance Premium is a deposit premium only and is an estimated amount.

**2.** This policy is subject to audit. At the close of each audit period, we shall compute the earned premium for that period and send notice to the First Named Insured. It is the responsibility of the First Named Insured to cooperate with us in any audit and to promptly respond to requests for audit information.

**3.** We may conduct an estimated audit, and notify you of the estimated audit premium due. If the estimated audit premium is not paid when due, this Policy or any renewal thereof may be cancelled, as allowable by law.

**4.** Return or Additional Premium Calculation Upon Audit:

**a.** The Minimum Premium is calculated by multiplying the Advance Premium by the percentage set forth above. If the earned premium calculated as a result of the audit is less than the Minimum Premium, the Minimum Premium shall apply and no return premium shall be payable to you.

**5.** Additional premium which is due as the result of an audit is promptly due and payable on notice to the First Named Insured by us. If the additional premium is not paid when due, this Policy or any renewal thereof may be canceled, as allowable by law.

**6.** You must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**All Other Terms And Conditions Of This Policy Remain Unchanged.**

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| OSU1006276-02 | 2/4/2025 | Antonio's Cigar, Co. | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CYBER LIABILITY EXCLUSION

It is agreed that:

This insurance does not apply to:

1. Any liability or damage arising, directly or indirectly, out of the loss of or alteration of any electronic data, electronic information, computer applications software, computer operations software or any other similar data, information or software contained within any computer hardware, computer system, computer network, or the Internet; or

2. Any liability or damage arising, directly, or indirectly, out of damage to any computer hardware, computer system, computer network, or the Internet as a result of 1. above.

   This exclusion applies regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to any such damage.

**All other provisions of the Policy remain unchanged.**

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| OSU1006276-02 | 2/4/2025 | Antonio's Cigar, Co. | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - COMMUNICABLE DISEASE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Section I – COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, and COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions are amended and the following added:

Communicable Disease

This insurance does not apply to:

(1) Any actual or alleged loss, liability, damage, compensation, injury, sickness, disease, death, medical payment, defense cost, cost, expense, claimant's attorney's fees, supplementary payments, equitable or non-monetary relief, settlement, judgment or any other amount, directly or indirectly and regardless of any other cause contributing concurrently or in any sequence, originating from, caused by, arising out of, contributed to by, resulting from, or otherwise in connection with a Communicable Disease or the fear or threat (whether actual or perceived) of a Communicable Disease.

(2) For the purposes of this endorsement, loss, liability, damage, compensation, injury, sickness, disease, death, medical payment, defense cost, cost, expense, claimant's attorney's fees, supplementary payments, equitable or non-monetary relief, settlement, judgment or any other amount, includes, but is not limited to, any cost to clean-up, detoxify, remove, monitor or test for a Communicable Disease.

(3) This exclusion applies even if the claim or "suit" against any insured alleges negligence or other wrongdoing, act, error or omission in connection with:

a. supervising, hiring, employing, training or monitoring of others that may be infected with and spread a Communicable Disease;

b. testing for a Communicable Disease;

c. failure to prevent the spread of a Communicable Disease;

d. failure to report a Communicable Disease to any local, state or government authorities;

(4) “Communicable Disease” means any contagious disease or illness which can be transmitted by means of any substance or agent from any organism to another organism where:

a. the substance or agent includes, but is not limited to, a virus, bacterium, parasite or other organism or any variation thereof, whether deemed living or not, and

b. the method of transmission, whether direct or indirect, includes but is not limited to, airborne transmission, bodily fluid transmission, transmission by instrument, transmission from or to any surface or object, solid, liquid or gas or between organisms, and

c. the disease, substance or agent can cause or threaten bodily injury, illness, emotional distress, damage to human health, human welfare or property damage.

d. “Communicable Disease” shall include, but is not limited to, Acquired Immune Deficiency Syndrome (AIDS) or Human Immunodeficiency Syndrome (HIV), Severe Acute Respiratory Syndrome (SARS), West Nile Disease, Ebola Virus Disease (EVD), chicken pox, polio, any type or strain of influenza or coronavirus (including, but not limited to the novel coronavirus (COVID-19), H1N1 flu virus (Swine Flu) and avian flu), hepatitis, measles, meningitis, mononucleosis, whooping cough, cholera, bubonic plagues and anthrax.

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION FOR DELIVERY SERVICE WORKERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **It is hereby understood and agreed that Paragraph 2. Exclusions of Section I –Coverage A – Bodily Injury And Property Damage Liability, Paragraph 2. Exclusions of Section I – Coverage B – Personal and Advertising Injury Liability and Paragraph 2. Exclusions of Section I – Coverage C – Medical Payments are amended by addition of the following exclusion at the end thereof:**

This insurance does not apply to “bodily injury”, “property damage” or “personal and advertising injury” to or arising directly or indirectly out of, resulting from, caused or contributed by, any “Delivery Service Worker.”

B. **SECTION V – DEFINITIONS,** is amended and the following added:

**a.** “Delivery Service Worker” means any person who provides “delivery services,” as well as any person(s) accompanying that "Delivery Service Worker.

“Delivery Service Worker” does not include your “employee(s)” while they are acting within the scope of their employment by you.

**b.** “Delivery services” means the conveyance of goods, items, or products from one location to another.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

 © Insurance Services Office, Inc., 2013 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ASBESTOS, LEAD OR SILICA

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The policy is hereby amended to include the following additional exclusion:

ASBESTOS, LEAD OR SILICA EXCLUSION

This insurance does not apply to any liability arising out of:

**a.** The actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of:

**(1)** asbestos, asbestos fibers, any other form of asbestos, or any products or materials containing asbestos, asbestos fibers or any other form of asbestos;

**(2)** lead, or any products or materials containing lead; or

**(3)** silica, silica dust, or any products or materials containing silica or silica dust,

regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to any injury or damage;

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of:

**(1)** asbestos, asbestos fibers, any other form of asbestos, or any products or materials containing asbestos, asbestos fibers or any other form of asbestos;

**(2)** lead, or any products or materials containing lead; or

**(3)** silica, silica dust, or any products or materials containing silica or silica dust,

by any insured or by any other person or entity;

**c.** Any supervision, instructions, recommendations, warnings, or advice given or which should have been given in connection with **a.** and **b.** above;

**d.** Any obligation to share damages with or repay someone else who must pay damages because of:

**(1)** asbestos, asbestos fibers, any other form of asbestos, or any products or materials containing asbestos, asbestos fibers or any other form of asbestos;

**(2)** lead, or any products or materials containing lead; or

**(3)** silica, silica dust, or any products or materials containing silica or silica dust;

**e.** Any injury or damage arising out of the loss of use of, or other unavailability of, any product or material actually, potentially, or allegedly containing asbestos, asbestos fibers, any other form of asbestos, lead, silica or silica dust; or

**f.** Any injury or damage arising out of the loss of use of, or other unavailability of, “your product” or “your work”, arising out of the loss of use of, or other unavailability of, any product or material actually, potentially, or allegedly containing asbestos, asbestos fibers, any other form of asbestos, lead, silica or silica dust.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

 Includes copyrighted material of Insurance Services Office, Inc. with its permission. 

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| OSU1006276-02 | 2/4/2025 | Antonio's Cigar, Co. | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – INJURY TO TEMPORARY WORKER, VOLUNTEER WORKER, CASUAL WORKER, OR INDEPENDENT CONTRACTOR

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **It is hereby understood and agreed that Paragraph 2. Exclusions of Section I –Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2. Exclusions of Section I – Coverage C – Medical Payments are amended by addition of the following exclusion at the end thereof:**

This insurance does not apply to “bodily injury”, “property damage” or “personal and advertising injury” to or arising directly or indirectly out of, resulting from, caused or contributed by,

a. Any “temporary worker”;
b. Any “volunteer worker”;
c. Any “casual worker”;
d. Any independent contractor hired directly or indirectly by you or on your behalf;
e. Any “employee” of any independent contractor hired directly or indirectly by you or on your behalf; or
f. Any spouse, child, parent, brother, sister or registered domestic partner of a., b., c., d., or e. above.

This exclusion applies:

a. Whether the insured may be held liable as an employer or in any other capacity

b. To any obligation to share damages with or repay someone else who must pay damages because of the injury; and

c. To liability assumed by the insured under an "insured contract".

B. **SECTION V – DEFINITIONS,** is amended and the following added:

For the purpose of this endorsement only, the term:

a. "Employee" includes a "leased worker", "temporary worker", "casual worker", borrowed servant or any other person working for any independent contractor hired directly or indirectly by you or on your behalf.

b. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

However, "temporary worker" does not include a person who is furnished to you by a labor union to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

a. "Casual worker" means:

i. A person, other than a person furnished to you by a labor union, who acts at the direction of and within the scope of duties determined by any insured, and is employed by any insured for a short time and for a limited and temporary purpose; or

ii. A person for whom any insured, or a labor leasing firm acting on behalf of any insured, does not withhold federal income taxes and pay federal unemployment tax.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| OSU1006276-02 | 2/4/2025 | Antonio's Cigar, Co. | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – LEAD

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY,

**2. Exclusions** and **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**, **2. Exclusions** are amended and the following added**:**

This insurance does not apply to:

**Lead**

**(1)** "bodily injury" or "personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, lead in any form.

**(2)** "property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, lead in any form.

**(3)** any damages, loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, lead in any form, by any insured or by any other person or entity.

**(4)** any claim or "suit" by or on behalf of a governmental authority for damages, loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, lead in any form, by any insured or by any other person or entity.

This exclusion shall apply without regard to the source or sources of lead, or the basis of the insured's liability. This exclusion includes defects or negligence in design, construction or materials, or any other event, conduct or misconduct, which may have or is claimed to have precipitated, caused or acted jointly, concurrently or in any sequence with lead in any form in causing injury or damage.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Premises:** |
| **Project Or Operation:** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 01,** the provisions under this Paragraph **A.** apply:

**1.** Paragraph **1.b.** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

**(1)** The "bodily injury" or "property damage":

**(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(b)** Arises out of the project or operation shown in the Schedule;

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**2.** Paragraph **1.b.** under **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

**(1)** The offense arises out of your business:

**(a)** Performed on the premises shown in the Schedule; or

 © Insurance Services Office, Inc., 2016 

**(b)** In connection with the project or operation shown in the Schedule; and

**(2)** The offense was committed during the policy period.

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I – Coverage C – Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**B.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 02,** the provisions under this Paragraph **B.** apply:

**1.** Paragraph **1.b.** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

**(1)** The "bodily injury" or "property damage":

**(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(b)** Arises out of the project or operation shown in the Schedule;

**(2)** The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

**(3)** A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V** – Extended Reporting Periods.

**2.** Paragraph **1.b.** under **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

**(1)** The offense arises out of your business:

**(a)** Performed on the premises shown in the Schedule; or

**(b)** In connection with the project or operation shown in the Schedule;

**(2)** The offense was not committed before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

 © Insurance Services Office, Inc., 2016 

**(3)** A claim for damages because of the "personal and advertising injury" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V –** Extended Reporting Periods.

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I – Coverage C – Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

 © Insurance Services Office, Inc., 2016 

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| OSU1006276-02 | 2/4/2025 | Antonio's Cigar, Co. | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITED ASSAULT OR BATTERY COVERAGE

## (Claims Expense within Coverage Limits)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM

**SCHEDULE**

**Sub-limits of Insurance:**

| | |
|---|---|
| $1,000,000 | Each Assault or Battery Incident Sub-limit |
| $1,000,000 | Annual Assault or Battery Aggregate Sub-limit |

### I. LIMITED ASSAULT AND BATTERY INSURING AGREEMENT

**A.** We will pay all sums the Named Insured is legally obligated to pay as damages because of “injury”, “bodily injury”, “property damage” or “personal and advertising injury” arising out of an “assault or battery incident” by any insured, any employee of any insured, or any other person,

**B.** We will have the right and duty to defend the Insured against any “suit” seeking those damages. However, we will have no duty to defend the Insured against any “suit” seeking damages for “injury”, “bodily injury”, “property damage” or “personal and advertising injury” to which this

insurance does not apply. We may, at our discretion, investigate any "assault and battery incident" and settle any claim or "suit" that may result. But:

1. The amount we will pay for damages and the cost of defense is limited as described in Section **II LIMITS OF INSURANCE** of this coverage form; and
2. Our right and duty to defend end when we have used up the applicable sub-limit of insurance in the payment of judgments or settlements under as described in Section **II LIMITS OF INSURANCE** in this coverage form

No other obligation or liability to pay sums or perform acts or services is covered.

**C.** This insurance applies only if the "assault or battery incident":

1. Arises out of your operations, which includes, but is not limited to, the selling, serving or furnishing of alcoholic beverages
2. Takes place on the insured premises and
3. Occurs during the policy period.

Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**II. LIMITS OF INSURANCE**

**A. Sub-limits for Limited Assault or Battery Coverage**

1. The Sub-limits for Limited Assault or Battery Coverage are subject to the Each Common Cause Limit and the Aggregate Limit of the LIQUOR LIABILITY COVERAGE FORM.

2. Subject to the Annual Assault or Battery Aggregate Sub-limit, the most we will pay for all damages and the cost of defense resulting from any "assault or battery incident" is the Each Assault or Battery Incident Sub-limit shown in the Schedule above.

3. The Annual Assault or Battery Aggregate Sub-limit shown in the Schedule above is the most we will pay for the sum of all damages and the cost of defense because of all "assault or battery incidents". The Annual Aggregate Sublimit applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Sub-limits of Insurance.

4. The Company will not pay any claim for damages or the cost of defense after the applicable sublimit of insurance under this

coverage has been exhausted by payment of judgments, settlements, defense costs, or supplementary payments. All such costs shall be included in the sub-limits of insurance.

**B. Application of the Liquor Liability Coverage Limits**

When the **LIMITED ASSAULT OR BATTERY COVERAGE** endorsement is added to the policy,
**SECTION III – LIMITS OF INSURANCE** of the **LIQUOR LIABILITY COVERAGE FORM** is
replaced by the following:

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
   **a.** Insureds;
   **b.** Claims made or "suits" brought; or
   **c.** Persons or organizations making claims or bringing "suits".

**2.** The Aggregate Limit is the most we will pay for all:
   **a.** "Injury" as the result of the selling, serving or furnishing of alcoholic beverages; and
   **b.** “Injury”, “bodily injury”, “property damage” or “personal and advertising injury” arising out of an “assault or battery incident”.

**3.** Subject to the Aggregate Limit, the Each Common Cause Limit is the most we will pay for all:
   **a.** "Injury", sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person; and
   **b.** “Injury”, “bodily injury”, “property damage” or “personal and advertising injury” arising out of an “assault or battery incident”.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**III. EXCLUSIONS**

**A. Additional Exclusion Applicable to the COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following exclusion is added to the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**:

Injury, damage or loss, however caused, arising, directly or indirectly, out of:

1. Assault;
2. Battery;
3. Any “assault or battery incident”.

**B. Additional Exclusion Applicable to the LIQUOR LIABILITY COVERAGE FORM**

The following exclusion is added to the **LIQUOR LIABILITY COVERAGE FORM**:

This insurance does not apply to “injury”, damage or loss, however caused, arising, directly or indirectly, out of:

1. Assault;
2. Battery;
3. Any “assault or battery incident”.

**C. Exclusions Applicable to the LIMITED ASSAULT AND BATTERY COVERAGE**

This insurance does not apply to:

1. “Injury”, claim or loss, however caused, arising, directly or indirectly, out of sexual assault, abuse or molestation.
2. Any claim for punitive or exemplary damages.

Further, the exclusions applicable to the **LIQUOR LIABILITY COVERAGE FORM** shall also apply to **LIMITED ASSAULT AND BATTERY COVERAGE**.

**IV. DEFINITIONS**

“Assault or battery incident” means harmful or offensive contact between or among two or more persons including, but not limited to, apprehension of harmful or offensive contact or threats or harmful or offensive contact. An “assault or battery incident” may be:

**a.** provoked or unprovoked by any person; and
**b.** arise out of or result from any act or omission in connection with:

**(1)** Prevention or suppression of an “assault or battery incident”;
**(2)** Protection of persons or property;
**(3)** Negligent hiring, supervision, retention or training of any “employee” of the Insured; or
**(4)** Implementation of adequate security measures, through security personnel, surveillance or other security devices.

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| OSU1006276-02 | 2/4/2025 | Antonio's Cigar, Co. | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOBACCO HEALTH HAZARD EXCLUSION

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the consumption, use of or the exposure to the consumption or use of any "Tobacco Product" manufactured, sold, handled or distributed by, for or on behalf of the insured.

"Tobacco Product", as used in this exclusion, shall include raw or cured tobacco, cigars and cigar wrappers, pipe tobacco, cigarette filters, snuff, chewing tobacco, smokeless tobacco, cigarettes and cigarette paper, tobacco smoke, gaseous or solid residues or by-products of tobacco use or consumption; and any chemical, mineral or other product sprayed on, applied to or customarily found within or used in conjunction with any "tobacco product".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CANNABIS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of:

**a.** The design, cultivation, manufacture, storage, processing, packaging, handling, testing, distribution, sale, serving, furnishing, possession or disposal of "cannabis"; or

**b.** The actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of "cannabis"; or

**2.** "Property damage" to "cannabis".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph **A.1.** or **A.2.** above.

However, Paragraph **A.1.b.** does not apply to "bodily injury" or "property damage" arising out of the actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, or contact with, "cannabis" by:

**(1)** An insured; or

**(2)** Any other person for whom you are legally responsible;

but only if the "bodily injury" or "property damage" does not arise out of your selling, serving or furnishing of "cannabis" to any person described above.

**B.** The exclusion in Paragraph **A.** does not apply to "personal and advertising injury" arising out of the following offenses:

**1.** False arrest, detention or imprisonment; or

**2.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor.

**C.** The following definition is added to the **Definitions** section:

"Cannabis":

**1.** Means:

Any good or product that consists of or contains any amount of Tetrahydrocannabinol (THC) or any other cannabinoid, regardless of whether any such THC or cannabinoid is natural or synthetic.

**2.** Paragraph **C.1.** above includes, but is not limited to, any of the following containing such THC or cannabinoid:

**a.** Any plant of the genus Cannabis L., or any part thereof, such as seeds, stems, flowers, stalks and roots; or

**b.** Any compound, by-product, extract, derivative, mixture or combination, such as:

**(1)** Resin, oil or wax;

**(2)** Hash or hemp; or

**(3)** Infused liquid or edible cannabis;

whether or not derived from any plant or part of any plant set forth in Paragraph **C.2.a.**

 © Insurance Services Office, Inc., 2020 

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WARRANTY ENDORSEMENT - EXCLUSION OF COVERAGE FOR FAILURE TO REQUIRE TIPS OR ANOTHER CERTIFICATION OF EMPLOYEES

**This endorsement modifies insurance provided under the following:**

**LIQUOR LIABILITY COVERAGE FORM**

The following exclusion is added to the policy:

This insurance does not apply to "injury", loss, cost, expense, liability or legal obligation arising out of, related to, or attributable to arising or resulting from a claim or "suit" against any insured for "injury" based on the selling, serving or furnishing of any alcoholic beverage, if at any time, you have breached one or more of the warranties set forth below in this Warranty Endorsement attached to and made a part of this policy.

I. The insured warrants as follows:

1. During the term of coverage, the insured will require and ensure that each and every “employee” at its establishment(s) who serves alcohol maintains active certification through TIPS or another certified program in the state they operate, prior to serving customers alcohol.

For the purposes of this endorsement, the term “employee” includes a “leased worker,” “temporary worker,” and “volunteer worker.”

For the purposes of this endorsement, the term “TIPS” refers to TIPS (Training for Intervention Procedures) Alcohol Safety Training program approved and certified for the state the Insured operates in.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ALL HAZARDS IN CONNECTION WITH AN ELECTRONIC SMOKING DEVICE, ITS VAPOR, COMPONENT PARTS, EQUIPMENT AND ACCESSORIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**Electronic Smoking Device**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the following:

**1.** The design, manufacture, distribution, sale, maintenance, use or repair of:

**a.** An "electronic smoking device"; or

**b.** Any component part of, or equipment or accessory designed for use with an "electronic smoking device", including, but not limited to, a mouthpiece, tube, tank, connector, atomizer, cartomizer, clearomizer, coil, battery, charger, cartridge, liquid, flavoring, solutions of any kind, or ingredients therein;

**2.** The actual, alleged, threatened or suspected inhalation of, contact with, exposure to, existence of, or presence of, vapor delivered from an "electronic smoking device"; or

**3.** Any component part of, or equipment or accessory designed for use with an "electronic smoking device", including, but not limited to those items listed in Paragraph **A.1.b.** of this endorsement, and in connection with the actual, alleged, threatened or suspected inhalation of, contact with, exposure to, existence of, or presence of, vapor delivered from an "electronic smoking device".

**B.** The following definition is added:

"Electronic smoking device" means a battery-powered device that delivers a vaporized inhalable substance through a mouthpiece. "Electronic smoking devices" include, but are not limited to, battery-powered:

**1.** Cigarettes;

**2.** Pipes;

**3.** Cigars;

**4.** Hookahs; and

**5.** Vaporizers, other than steam or mist inhalers.

 © Insurance Services Office, Inc., 2018 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – PERFLUOROALKYL AND POLYFLUOROALKYL SUBSTANCES (PFAS)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Perfluoroalkyl And Polyfluoroalkyl Substances**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged, threatened or suspected inhalation, ingestion, absorption, consumption, discharge, dispersal, seepage, migration, release or escape of, contact with, exposure to, existence of, or presence of, any "perfluoroalkyl or polyfluoroalkyl substances".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "perfluoroalkyl or polyfluoroalkyl substances", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Perfluoroalkyl And Polyfluoroalkyl Substances**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged, threatened or suspected inhalation, ingestion, absorption, consumption, discharge, dispersal, seepage, migration, release or escape of, contact with, exposure to, existence of, or presence of, any "perfluoroalkyl or polyfluoroalkyl substances".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "perfluoroalkyl or polyfluoroalkyl substances", by any insured or by any other person or entity.

 © Insurance Services Office, Inc., 2022 

**C.** The following definition is added to the **Definitions** Section:

"Perfluoroalkyl or polyfluoroalkyl substances" means any:

**1.** Chemical or substance that contains one or more alkyl carbons on which hydrogen atoms have been partially or completely replaced by fluorine atoms, including but not limited to:

**a.** Polymer, oligomer, monomer or nonpolymer chemicals and their homologues, isomers, telomers, salts, derivatives, precursor chemicals, degradation products or by-products;

**b.** Perfluoroalkyl acids (PFAA), such as perfluorooctanoic acid (PFOA) and its salts, or perfluorooctane sulfonic acid (PFOS) and its salts;

**c.** Perfluoropolyethers (PFPE);

**d.** Fluorotelomer-based substances; or

**e.** Side-chain fluorinated polymers; or

**2.** Good or product, including containers, materials, parts or equipment furnished in connection with such goods or products, that consists of or contains any chemical or substance described in Paragraph **C.1.**

 © Insurance Services Office, Inc., 2022 

TRISURA

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| OSU1006276-02 | 2/4/2025 | Antonio's Cigar, Co. | |

**(The above information is required only when this endorsement is issued subsequent to preparation of the policy.)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED EXPOSURES

The following is added to the Exclusions section:

This insurance does not apply to, nor shall we have the duty to defend, any claim or "suit" arising out of or resulting from any of the following exposures if the existence of the exposure is with the knowledge and consent of an insured, or if an insured should have reasonably known such exposures existed:

1. Service of alcohol in any form other than the liquid or as part of gelatin. This includes but is not limited to vaporized alcohol or powdered alcohol;
2. Amusement rides operated by an insured, including but not limited to mechanical or animal rides. This exclusion does not apply to video games, whether or not they involve physical participation by a player;
3. Animals of any type except certified Service Animals.
4. Bungee attachment, climbing, or any other raising, jumping, swinging or lowering of an individual using pulleys, ropes or cords;
5. Use of any devices designed to increase the amount or expedite the consumption of alcohol;
6. Drinks that have a flame as consumed, including but not limited to those commonly referred to as flaming shots;
7. Drinks or food that are prepared or served with liquid nitrogen, flames or any other type of subfreezing or flammable liquid.
8. Mechanical bull riding;
9. Performances involving flames other than the flames of candles or devices while being employed in the performance by a professional juggler;
10. Performances involving pyrotechnics;
11. Use, sale or possession of pyrotechnics;
12. Skateboarding;
13. Sporting events that involve motorized vehicles or by their rules allow person-to-person contact. This exclusion does not apply to volleyball;

TRISURA

14. Tobogganing; or
15. Use of trampolines.
16. Flame Shows/Flame Shots;
17. Velcro/Wall Climbing/Rock Climbing;
18. Body Surfing/Crowd Surfing/Stage Diving/Moshing/Foam Frenzy; or
19. Dancing on any pool table, bar top, table top, runway or any type of raised platform or related structure.
20. All liability arising from delivery operations.
21. All liability arising from the operation of Hookah devices.
22. All liability arising from the sale, consumption or use of Karatom products
23. All liability arising from the sale, consumption or use of Ketamine products
24. All liability arising Methyl tertiary-Butyl Ether (MTBE)

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

TRISURA

# PRIVACY POLICY

Trisura Specialty Insurance Company is committed to treating and using personal information about you and your employees responsibly. We will not disclose nonpublic, personal information about you and your employees to anyone except as permitted or required by law.

## Collecting Information

We collect nonpublic, personal information from you about you and your employees to properly maintain and service your policy. This nonpublic, personal information may come from the following sources:

- Application information and other forms (example: previous insurance coverage)
- Transaction information (examples: premiums, payment history)
- Third-Party information (example: claims history)

## Disclosing Information

In the course of conducting business and as permitted by law, we may share nonpublic, personal information about you and your employees with our affiliated companies. We do not disclose any nonpublic, personal information about you and your employees to any nonaffiliated third parties, except for the conduct of our business or as permitted or required by law. Information may be supplied to others providing business services for us. Additionally, we may provide information for audit or research purposes or to law enforcement agencies to help us prevent fraud.

## Securing Information

We restrict access to nonpublic, personal information about you and your employees to our employees who need to know the information necessary to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with applicable regulations to guard the nonpublic personal information of you and your employees.